**Ramonita Galarza, a Minor, by Amelia Galarza, Her Mother and Next Friend, Plaintiff-Appellee, v. Lottie Melter, Administratrix of the Estate of Ella Randall, Deceased, Defendant-Appellant.**

Gen. No. 52,387.

First District, Fourth Division.

October 29, 1969.

Morton H. Meyer and Gerrard and Gerrard, of Chicago (Michael A. Gerrard and Allen S. Gerrard, of counsel), for appellant.

John G. Phillips, Grossman & Mitzenmacher, and Edwin A. Strugala, of Chicago (John G. Phillips and Edwin A. Strugala, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Ramonita Galarza, a 3-year-old child, was injured as a result of falling through an open bedroom window located on the second floor of the premises located at 1001 North Francisco Avenue in Chicago. The trial court directed the jury to find the issues in favor of plaintiff on the question of liability when defendant did not adduce any evidence but rested after plaintiff's case was presented. The jury deliberated as to the award of damages and returned a verdict in the sum of $40,000. Defendant, the Administratrix of the Estate of Ella Randall, deceased, appeals and presents the following issues for review:

(1) the court erred in directing a verdict for plaintiff on the issue of liability;

(2) the court erred in the admission of hospital bills and X-rays into evidence; and

(3) the court improperly refused to instruct the jury regarding the credibility of witnesses.

Count I of the third amended complaint alleged that defendant's decedent, Ella Randall, the landlady, was the

owner of a multiple dwelling of three stories containing nine (9) apartments located at 1001 North Francisco Avenue in Chicago; that on February 1, 1961, Amelia Galarza, the child's mother, entered into an oral agreement wherein the mother agreed to rent an apartment on the second floor at a monthly rental of $100 and that the landlady agreed to fully paint the apartment and repair all defective windows and window latches. It was further alleged that the agreement was made by the parties for the benefit of the child, but that the landlady failed to perform and refused to repair the defective window latches and that by reason of her negligence, as aforesaid, the minor child incurred personal injury.

Count II alleged the oral agreement to lease the apartment and the landlady's knowledge that the Galarza family consisted of six children of tender years and that at the time the tenancy was agreed upon, the landlady knew that the window panes, frames, sashes and other parts of the windows were defective and in a dangerous condition. It was further alleged that the landlady had a duty not to lease the premises in this condition and had a duty to make repairs; that by reason of the landlady's breach of her duty she negligently leased the premises knowing of the presence of minor children in the family; that with knowledge of the defective and dangerous conditions, she failed to repair or correct loose window frames, failed to install window locks and correct or repair faulty window sash cord or sash weight; and that by reason of the landlady's negligence and, as a direct and proximate result, the minor suffered personal injury.

Defendant denied each and every allegation of the complaint, except that the minor child was 3 years of age.

ROSALYN MALDONADO, testified for plaintiff:

The witness accompanied Mr. and Mrs. Galarza, the parents of plaintiff, when they sought to rent the prem-

175

ises. The witness is the sister of the minor's mother, who did not speak English. The witness, her sister and brother-in-law met the decedent landlady who showed them the premises offered for rent. The landlady was advised that the family consisted of the parents and their six children. An examination of the premises revealed that all seven rooms needed paint, the windows lacked locks, the rooms lacked lights, and the toilet failed to flush. Mr. Galarza stood by the back bedroom window and in trying to open it, observed, "the window go straight to the top." When Mr. Galarza touched the window, it would immediately go up. Mr. Galarza checked the windows in the other rooms and discovered that a window in the dining room would also rise and open to the top by merely touching the sash.

Mr. Galarza told the landlady that he would like to take the apartment if the landlady promised to fix everything in it, the windows, washroom, lights and some painting. The landlady said the rent for the apartment was $100 a month and if it were paid at that time, she promised to make repairs and send someone as soon as she could to fix the windows, lights and washroom because her janitor was too busy at the time to do the work. The landlady was paid the $100 and she promised to fix the windows, lights and the washroom. The windows lacked lock latches and were the upper-lower sash and weight balance type.

Two weeks later on February 1, 1961, Mr. and Mrs. Galarza and their children moved into the premises. The injury to plaintiff occurred on August 26, 1961. The witness lived nearby and visited the Galarzas daily and testified that none of the work promised by the landlady was ever performed. Mr. Galarza painted the premises when the landlady furnished the paint. (It was stipulated that the minor child fell out of the bedroom

window.) On the day the child fell, the witness arrived at the apartment in response to Mr. Galarza's screaming and observed that the bedroom window she examined on the day the premises were rented was in the same condition. She observed it was all the way up, the sill being two feet from the floor.

The witness further testified that she remembered that her sister never opened these windows in the summer time because her sister was afraid that the small children might fall out. Every day the witness visited the apartment she observed that her sister and brother-in-law never opened a window in any of the rooms. Angelo Galarza, father of plaintiff testified:

He discussed renting the apartment from the landlady. His wife and his sister-in-law Mrs. Maldonado were present. Two windows of six in the apartment would immediately rise to the top at a touch of the finger. He told the landlady he would rent the premises and she promised to fix the windows, toilet, lights, and also paint. After advising the landlady he had little children and she must fix the windows, she promised she would, after the Galarzas moved into the premises. He did nothing on his own about repairing the locks on the windows.

OPINION

Defendant initially contends that the court erred in directing a verdict against her, because the question of liability was a proper matter for the jury's determination and, therefore, should not have been resolved as a matter of law. Plaintiff contends that the court properly directed a verdict, since the evidence overwhelmingly showed that the windows were defective and dangerous and the landlady failed to repair them and, as a consequence, the child fell out and was injured.

■■ A directed verdict is proper if all of the evidence, when viewed in its aspect most favorable to

the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1968). In Ladd v. Ruck, 108 Ill App2d 379, 248 NE2d 147 (1969), the court stated at page 382:

> "The Pedrick rule does not require that verdicts be directed or motions notwithstanding verdicts be granted merely because a defendant has failed to introduce evidence in his own behalf or has failed to dispute facts presented by the plaintiff."

Defendant claims the window may have been deliberately left open for the circulation of fresh air. Plaintiff claims that the child must have touched the defective window causing it to rise just before the child fell out. This contention is premised upon the assumption that the undisputed testimony showed that all the windows in the apartment were always deliberately kept closed. However, an examination of the evidence reveals that only Rosalyn Maldonado testified that the windows were never deliberately raised. The parents did not, nor did any of their children, testify regarding any practice of keeping all the windows closed. Facts may be undisputed or a defendant may have failed to introduce evidence in his behalf, but it does not follow that issues are, therefore, uncontroverted. Ladd, supra. In Genck v. McGeath, 9 Ill App2d 145, 132 NE2d 437, (1956), where defendant offered no evidence, the court said at page 153:

> "Even where there is no dispute in the evidence but where inconsistent conclusions may legitimately be drawn, the question is one for the jury. Panczko for Use of Enright v. Eagle Indemnity Co. of New York, 346 Ill App 144; Minters v. Mid-City Management Corp., 331 Ill App 64." See also Ladd, supra.

Defendant further argues that the jury should have had an opportunity to weigh the testimony which depicted a family of eight persons living in an apartment where no windows were ever deliberately opened for approximately seven months, from February 1st to August 26th.

In Oliver v. Oliver, 340 Ill 445, 172 NE 917 (1931), at page 460, the court said:

> "The witness may be contradicted by circumstances as well as by statements of others contrary to his own, or there may be such a degree of improbability in his statements as to deprive them of credit, however positively made."

 Since there was no direct evidence as to the immediate circumstances surrounding the incident, we believe disputed inferences could have been drawn from the evidence and the issue of liability should have been submitted to the jury.

Since we are reversing and remanding this cause, we need not consider the alleged errors in the trial pertaining to damages. We hereby reverse and remand this cause for a new trial.

Reversed and remanded.

DRUCKER, P. J. and McNAMARA, J., concur.