WANDA HENDRIX, Plaintiff-Appellee, v. BONNIE STEPANEK, Defendant-Appellant.

Fifth District    No. 5—01—0082

Opinion filed June 4, 2002.

Ronald A. Roth and Richard A. Tjepkema, both of Roth Law Offices, of Granite City, for appellant.

Robert W. Rongey, of Callis, Papa, Jackstadt & Halloran, P.C., of Granite City, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

Bonnie Stepanek (defendant) appeals from the trial court's order entered upon the jury's verdict in favor of Wanda Hendrix (plaintiff), awarding plaintiff $80,000 in damages in this negligence action. On appeal, defendant argues (1) that the trial court erred in failing to grant defendant's motion for a mistrial when one of plaintiff's witnesses testified to an undisclosed opinion, (2) that the trial court erred in giving the jury an instruction to consider, when determining damages, plaintiff's loss of a normal life, and (3) that the trial court erred in granting plaintiff's motion for a directed verdict and then instructing the jury that defendant was negligent as a matter of law. We affirm.

## FACTS

This case arose from a February 6, 1997, automobile accident in which defendant's car hit plaintiff's car, causing damage to plaintiff's car and injuring plaintiff. At the jury trial, defendant was plaintiff's first witness. The scene of the accident was the busy intersection of St. Anthony's Way (St. Anthony's) and the parking lot of the St. Francis Day Care at about 5 p.m. on a weekday. Defendant testified that this intersection was very busy at this time of day because several doc-

tors' offices are located nearby, as well as the day-care facility. At the time of the accident, plaintiff was traveling south on St. Anthony's, and defendant was attempting to make a left turn onto St. Anthony's from the day-care parking lot.

Defendant testified that there was a hill on the north side of the intersection, the direction from which plaintiff was traveling, and there was a curve on the south side. Defendant testified that before pulling out, she stopped at least twice while in the intersection. Defendant stopped first to observe the intersection before she got to a sign next to the intersection that would obstruct her view. Defendant claimed that she was able to see up the hill to her north without obstruction before she pulled any further into the intersection. Defendant testified that she looked both ways and saw no vehicles on St. Anthony's at this time.

Although defendant felt that she could clearly see the traffic on St. Anthony's, she testified that she had to inch out into the intersection in order to fully see. Defendant was impeached with her prior testimony that her view was obstructed when she pulled into the intersection. Defendant explained that she did not understand the prior questioning. Defendant testified that she was traveling at about five miles per hour when she pulled onto St. Anthony's and hit plaintiff's car.

As defendant pulled onto the street, she struck the left side of plaintiff's car with the right front bumper of her car. Defendant testified that the accident would not have happened if she had not pulled out when she did. Defendant also testified that plaintiff tried to swerve out of defendant's way but that plaintiff did not have time to stop.

Berkley Frederick York testified that on the day of the accident, he was on his way to pick up his daughter from the day-care center when he witnessed the accident. York testified that for a few seconds before the crash he observed both cars, and he thought plaintiff was traveling faster than the speed limit, going about 30 to 40 miles per hour in a 30-mile-per-hour speed zone. York agreed with defendant that the accident would not have occurred if defendant had not pulled out when she did.

Dr. Edward Blair testified by evidence deposition. Dr. Blair is a physician specializing in internal medicine, and plaintiff is an employee for another doctor in the building where Dr. Blair keeps his office. Dr. Blair is plaintiff's primary care physician. Dr. Blair saw plaintiff before the accident on October 11, 1996, at which time he diagnosed her as suffering from migraine headaches and prescribed medication to relieve the nausea associated with those headaches. Dr. Blair testified that he next saw plaintiff on October 6, 1998, one year and six months

after the accident. In 1998, plaintiff complained of almost daily headaches, and Dr. Blair diagnosed these headaches as a mixed type, composed of both vascular and muscular components.

Dr. Blair testified that he was aware that plaintiff was involved in a car accident in February 1997, but he did not specifically treat her as a result of that accident. Dr. Blair also testified, however, that as a general rule trauma such as that associated with a car accident can aggravate and accelerate existing problems, such as headaches, and that it can cause other symptoms, such as the neck pain of which plaintiff complained.

Dr. Blair testified that plaintiff did not indicate that the onset of her headaches was related to the 1997 car accident. When asked if he had any opinion about whether the accident caused plaintiff to have migraine headaches, Dr. Blair testified that he did not have any opinion.

Dr. David Schreiber testified in court, even though he had given an evidence deposition earlier. For reasons unrelated to this appeal, this case had been tried previously to a jury, but it ended in a mistrial. Defendant did not object to Dr. Schreiber testifying live, rather than from his evidence deposition, and did not file a motion *in limine* to bar or limit his testimony.

Dr. Schreiber, a neurologist, testified that Dr. Blair referred plaintiff to him for her headaches. Dr. Schreiber initially saw plaintiff on March 10, 1997, about three weeks after the car accident. Plaintiff described her history of headaches, stating that she began having migraine headaches at age 12 and that these headaches continued about twice a year, lasting two to three days each and usually occurring close in time to her menstrual period. In his testimony, Dr. Schreiber also related plaintiff's description of the car accident:

"Eventually, on or about February 6th, 1997, she was driving her car. She was in a seat belt. It was about 5 [o'clock] in the evening in Alton. She was going down the hill from the hospital, I guess heading towards College Avenue, which is right by the hospital.

A car suddenly pulled out from a parking lot right near there and hit her car on the driver's door. Ms. Hendrix saw it coming, kind of grabbed the steering wheel and tried to swerve to her right, but her car was hit. The impact threw her and her head to the right and then to the left."

Dr. Schreiber testified that plaintiff told him that although she was upset after the accident, she thought she would be okay. However, about three days after the accident, according to plaintiff's statement to Dr. Schreiber, she started having increasing difficulties with her left shoulder and the area between that shoulder and her neck. When

these problems would not cease upon her taking the medications previously prescribed to her, Dr. Blair referred plaintiff to Dr. Schreiber.

Dr. Schreiber testified that when he saw plaintiff, she was having several problems, including daily neck pain, headaches in the back of her head, and aching in her head, all of which increased as a day went by. When Dr. Schreiber examined plaintiff, he noticed a muscle spasm in the neck and the area below it between the shoulder blades. Dr. Schreiber testified that this is an objective symptom, one that he could actually see and feel, as opposed to a description of pain, which he could not see or feel and which a patient would have to describe for him to know about it. Dr. Schreiber testified that these muscle spasms were not something plaintiff could fake. Dr. Schreiber found a limited range of mobility in plaintiff's neck, a significant weakness in the left shoulder muscle, and decreased sensation in her left shoulder area. Dr. Schreiber tentatively diagnosed plaintiff as suffering from muscle and ligament damage to her neck, nerve-root damage to her shoulders, and a cervical strain that resulted from the car accident.

Dr. Schreiber testified that the pain plaintiff was experiencing in her neck and shoulders could cause her migraine headaches to increase. Dr. Schreiber admitted that he testified earlier in a deposition that plaintiff's migraines were not caused by the accident. Dr. Schreiber explained that plaintiff did not have migraines caused by the stress of the accident itself but that her previously existing migraines might have been exacerbated by the pain from the neck and shoulder injuries she received in the car accident. Dr. Schreiber testified that, to a reasonable degree of medical certainty, the damage to the muscles and ligaments and the damage to the nerve roots were caused by the car accident and that plaintiff's migraines could have been exacerbated by such injuries.

Defendant's attorney objected to the last portion of Dr. Schreiber's testimony as undisclosed opinion testimony in violation of Supreme Court Rule 213 (177 Ill. 2d R. 213). Defendant's objection was based upon the fact that in his earlier testimony Dr. Schreiber did not state that plaintiff's migraines were connected to the accident. Dr. Schreiber testified that he wanted to testify in person at plaintiff's hearing, even though he had already given an evidence deposition, because he felt that he had done a "terrible job at the deposition," in that he had not explained himself very well. Dr. Schreiber explained that he charged plaintiff $600 for the evidence deposition but that he was appearing in court for free, to which defendant's attorney replied, "The next time you do a terrible job for me, do you promise to come live?"

Defendant asked the court for a mistrial based upon Dr. Schreiber's improper opinion testimony, but defendant did not ask for any

lesser remedies, such as striking the offending testimony. The court denied the motion for a mistrial.

Dr. Lawrence Burch testified that he was traveling south on St. Anthony's about 10 to 20 yards behind plaintiff immediately before the accident. Dr. Burch testified that he was traveling at about 15 to 20 miles per hour as he went down the hill and that he and plaintiff were traveling at approximately the same speed. Dr. Burch described the accident as follows:

> "[A]s we were going down the hill, this other car came out of the parking lot for the day care center and came right out and hit her probably in the driver's—well, the rear door on the driver's side of the car."

Dr. Burch testified that there was nothing plaintiff could do to avoid the accident.

Plaintiff testified that just before the accident, St. Anthony's was very congested. Plaintiff denied that she was traveling at 40 miles per hour. She claimed that there is too much traffic in that area at that time of day to go that fast. Plaintiff testified that as she was coming down the hill on St. Anthony's, she saw defendant's car coming at her out of her peripheral vision. Plaintiff testified that when she saw defendant's car, she gripped the steering wheel and tried to pull to the side. Plaintiff testified that she slammed on her brakes and swerved to the right but that there was nowhere to go. Plaintiff testified that the impact of the collision was very hard and that her driver's side door was buckled and had a hole in it and that her driver's side passenger door was dented and had an even bigger hole in it.

Immediately after the accident, plaintiff was upset but did not think she was physically injured. After she got home, plaintiff realized that she should have called the police to the scene. So she called defendant, and both went to the police station to provide information for an accident report. For a couple of weeks after the accident, plaintiff was sore, stiff, and experiencing daily headaches, but she thought these symptoms would either subside or go away. When the symptoms persisted, she first talked to her primary-care physician, Dr. Blair, who referred her to Dr. Schreiber.

Plaintiff explained that the accident affected everything in her life. Plaintiff characterized her life before the accident as very active: gardening, housework, camping, canoeing, and motorcycle riding. She testified that all of those activities, which she frequently enjoyed prior to the accident, she now can do only infrequently, if at all.

Plaintiff testified that after the accident she experienced an increase in both regular and migraine headaches. Plaintiff explained that after the accident she started having daily headaches and neck

aches, both of which were much worse if she was very active that day. Also, plaintiff testified that after the accident her migraine headaches increased both in intensity and in frequency.

At the close of plaintiff's evidence, plaintiff argued that defendant admitted liability in her testimony that the accident would not have happened if she had not pulled out when she did and that plaintiff could not have avoided the accident. The trial court agreed and granted plaintiff's motion for a directed verdict on the issue of liability.

The only witness for the defense was Dr. Peter Anderson. Dr. Anderson examined plaintiff at defendant's request. He performed a neurological examination, which showed plaintiff to be normal but suffering from cervical strain. Dr. Anderson testified that plaintiff would not need additional medical treatment and would be able to continue her work as before the accident. Dr. Anderson admitted, however, that an injury such as a neck sprain can cause migraines to increase in frequency and intensity.

The jury returned a verdict in favor of plaintiff, awarding her $80,000 in damages apportioned as follows: aggravation of any preexisting condition, $17,000; loss of a normal life, $15,000; pain and suffering, $30,000; and medical expenses both past and future, $18,000. The trial court entered a judgment on the jury verdict.

Defendant filed a timely posttrial motion, alleging that she was entitled to a new trial due to the erroneous admission of Dr. Schreiber's undisclosed opinion testimony, an improper jury instruction giving the jury the ability to assess damages for plaintiff's loss of a normal life, and the trial court's error in granting plaintiff's motion for a directed verdict on the issue of liability. The court denied defendant's posttrial motion but later granted defendant's motion to stay the enforcement of the judgment pending an appeal.

## ANALYSIS

### 1. Plaintiff's Failure to Disclose Dr. Schreiber's Opinion Testimony

Defendant argues that in the pretrial phase, Dr. Schreiber gave a deposition in which he said nothing about plaintiff's accident causing an increase in the migraine headaches she suffered. Defendant argues that plaintiff never disclosed an intention to present any opinion evidence concerning an increase in the nature or extent of migraine headaches that resulted from the accident, either through her complaint or her opinion disclosure statement.

Defendant cites to Dr. Schreiber's testimony that plaintiff's migraine headaches, which she had been experiencing since she was 12 years old, were not related to the accident. In a later evidence deposition, taken before the first trial of this cause, Dr. Schreiber testified

that he did not think that plaintiff's migraines were related to the accident.

In her opinion-witness disclosure, plaintiff disclosed Dr. Schreiber's testimony as a part of the category of all treating physicians:

> "Any and all treating physicians may testify with regard to the nature and extent of plaintiff's injuries, any disability resulting therefrom, the plaintiff's ability to work or engage in her usual occupation, any disfigurement, and plaintiff's medical expenses. See all medical records and bills previously produced in discovery; see also deposition [*sic*] of various treating physicians upon completion of same."

Plaintiff did not supplement this disclosure before the trial, and defendant did not request that the disclosure be made more definite and certain.

Defendant complains of Dr. Schreiber's courtroom testimony that the muscle contractions plaintiff experienced in her neck as a result of the accident could trigger an increase in her migraine headaches. Dr. Schreiber further testified that, based upon a reasonable degree of medical certainty, he was of the opinion that the damage to the muscles and ligaments and the damage to the nerve roots were caused by the accident and that plaintiff's migraine headaches could be "exacerbated" by the accident.

■ Supreme Court Rule 213(g) states as follows:

> "An opinion witness is a person who will offer any opinion testimony. Upon written interrogatory, the party must state:
>
> > (i) the subject matter on which the opinion witness is expected to testify;
> >
> > (ii) the conclusions and opinions of the opinion witness and the bases therefor; and
> >
> > (iii) the qualifications of the opinion witness; and provide all reports of the opinion witness." 177 Ill. 2d R. 213(g).

■ Plaintiff's first response to this argument is that defendant has waived her right to the review of the issue for her failure to object to the verdict form that allowed the jury to assess damages for "the aggravation of any pre[ ]existing ailment or condition." Defendant responds that she objected appropriately to Dr. Schreiber's testimony, preserving the issue for appeal by moving the court for a mistrial based upon that improper testimony. Defendant asserts that once the trial court overruled her objection to this line of testimony and denied her motion for a mistrial, the instruction to which plaintiff refers was supported by the evidence and was not objectionable. Regardless of whether defendant might have objected to the instruction, we agree with defendant that she properly protected her right to the review of this issue by moving for a mistrial.

■ The trial court's decision to admit evidence should not be reversed unless it is an abuse of discretion. *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932 (2000). The primary goal of the discovery rules is to promote complete disclosure. *Buehler v. Whalen*, 70 Ill. 2d 51 (1977). More particularly, the purpose of discovery rules requiring the timely disclosure of expert witnesses and their opinions is to avoid surprise and to discourage strategic gamesmanship. *Copeland*, 316 Ill. App. 3d at 937.

■ The party who is challenging the admission of opinion testimony as a violation of Rule 213(g) must also show some prejudice arising from the alleged error. *Linn v. Damilano*, 303 Ill. App. 3d 600, 606 (1999). Without a showing of the manner in which the party was prejudiced, "the judgment need not be reversed on appeal." *Linn*, 303 Ill. App. 3d at 606. Plaintiff contends that there was other evidence, properly admitted, on the issue of exacerbation, such that Dr. Schreiber's testimony did not prejudice defendant, even if it had been improperly admitted. We agree with plaintiff.

■ Plaintiff testified that her migraine headaches occurred more often and were more severe after the accident. Dr. Blair testified that trauma from the injuries plaintiff received in the car accident could aggravate and accelerate existing problems such as headaches. Dr. Anderson, defendant's expert witness, testified that an injury, such as that plaintiff received in the car accident, could cause migraine headaches to be more frequent and more painful. Defendant does not complain about the testimony from these witnesses. An error in admitting evidence will not be considered prejudicial where similar evidence is properly admitted elsewhere. *Conner v. Ofreneo*, 257 Ill. App. 3d 427, 436 (1993).

Since three other witnesses testified that plaintiff's migraine headaches could have been exacerbated by the accident, Dr. Schreiber's testimony on that issue, even if in violation of Rule 213(g), did not prejudice defendant. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

### 2. Jury Instructions

Defendant next argues that the trial court erred in instructing the jury that it could award damages for plaintiff's loss of a normal life as a separate element of damages. The instruction to which defendant objects was as follows:

> "You must fix the amount of money which will reasonably and fairly compensate the plaintiff for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant, taking into consideration the nature, extent[,] and duration of the injury:

The aggravation of any pre[ ]existing ailment or condition;

The loss of a normal life;

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries;

The reasonable expense of necessary medical care, treatment, and services received and the present value of reasonable expenses of medical care, treatment, and services reasonably certain to be received in the future;

Whether any of the elements of damages has [*sic*] been proved by the evidence is for you to determine."

The verdict forms also included a loss of a normal life as an element of damages. Defendant objected to these instructions on the grounds that the term "disability" should be used instead of "loss of normal life" and that the term "loss of normal life" would lead the jury to overcompensate plaintiff. Defendant also objected on the basis that the instructions were not "IPI standard instructions." The trial court used the instructions over defendant's objections.

Plaintiff points out that the term "loss of normal life" is now a part of Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2000) (IPI Civil (2000) No. 30.04.01). That instruction gives the trial court the discretion to decide whether to use the term "loss of normal life" or, in the alternative, the term "disability."

■ Supreme Court Rule 239(a) provides as follows:

"(a) Use of IPI Instruction; Requirements of Other Instructions. Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given in that subject should be simple, brief, impartial, and free from argument." 177 Ill. 2d R. 239(a).

■ Given that the instruction is a standard Illinois pattern instruction, the only issues are whether the instructions, when considered as a whole, are clear enough to avoid confusing the jury and whether they fairly and accurately state the applicable law. *Howat v. Donelson*, 305 Ill. App. 3d 183, 186 (1999). "As a general rule, a judgment will not be reversed where the jury instructions are faulty unless they mislead the jury and the complaining party suffered prejudice." *Howat*, 305 Ill. App. 3d at 186.

Defendant argues that the trial court should not have chosen the loss-of-normal-life instruction but should instead have chosen the disability instruction. According to defendant, we should reverse the trial

court on this issue and follow the First District Appellate Court in *Tornabene v. Paramedic Services of Illinois, Inc.*, 314 Ill. App. 3d 494 (2000). In *Tornabene,* the court reversed the trial court on other grounds and then instructed the trial court to give the disability instruction rather than use the term "loss of normal life," should the issue arise on remand. *Tornabene,* 314 Ill. App. 3d at 502. According to the court in *Tornabene,* the term "loss of normal life" is too subjective and makes damages too difficult to quantify. *Tornabene,* 314 Ill. App. 3d at 502. We respectfully disagree.

Instead, we agree with the Second District Appellate Court in *Turner v. Williams,* 326 Ill. App. 3d 541 (2001), wherein the court stated as follows:

> "The addition of instruction IPI Civil No. 30.04.01, which allows either loss of a normal life or disability to be given as an instruction, depending on the nature of the evidence at trial, illustrates that the use of an instruction on loss of a normal life is not contrary to Illinois law. Indeed, loss of a normal life has been recognized by this court as an element of compensable damage. *Zuder v. Gibson,* 288 Ill. App. 3d 329 (1997); see also *Hiscott v. Peters,* 324 Ill. App. 3d 114, 127 (2001)." *Turner,* 326 Ill. App. 3d at 551.

Other courts share our conclusion that juries could understand the term "loss of normal life" much more readily than the term "disability," depending upon the facts presented at the trial. *Abbinante v. O'Connell,* 277 Ill. App. 3d 1046, 1052 (1996); *Smith v. City of Evanston,* 260 Ill. App. 3d 925, 933 (1994). In the case at bar, plaintiff testified that before the accident she was very active and enjoyed gardening, housework, camping, canoeing, and motorcycle riding but that after the accident either she could not enjoy these activities at all or she was only able to enjoy them much less frequently. Her testimony on this subject focused on her diminished quality of life after the accident. Her testimony was clearly that she suffered a loss of the normal life activities she enjoyed before the accident.

Disability, on the other hand, is typically shown by evidence of physical and mental handicaps that result from injuries. Neither of these categories of damages—"loss of normal life" or "disability"—is particularly easy for juries to quantify in terms of monetary value. Neither is the category of pain and suffering. Nevertheless, juries have been rising to those challenges for quite some time now. We do not agree with defendant's argument that "loss of normal life" is too difficult for juries to use in assessing damages.

Defendant has not shown how any other instruction incorrectly informed the jury of the law or how she was prejudiced by the use of

the loss-of-normal-life instruction. The instruction is an Illinois pattern instruction, and there was evidence to support giving it to the jury. Therefore, we hold that the trial court did not abuse its discretion in overruling defendant's objection to the use of loss of normal life as an element of damages for the jury to assess.

### 3. Directed Verdict on the Issue of Defendant's Liability

Defendant next argues that the trial court erred in directing a verdict in plaintiff's favor on the issue of liability. We review rulings on motions for directed verdict by determining whether all of the evidence, when viewed in the light most favorable to the opponent of the motion, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494 (1967). Defendant admits that in directing the verdict against her, the trial court relied upon her own admissions. Defendant contends, however, that her statements—that the accident would not have occurred if she had not pulled into the intersection when she did and that plaintiff could not do anything to avoid the accident—show only cause in fact and provide an insufficient basis for a directed verdict.

To demonstrate negligence, a plaintiff must establish a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the plaintiff's breach of duty. *Turner v. Roesner*, 193 Ill. App. 3d 482, 488 (1990). Duty is the legal obligation to conform one's behavior to a particular standard for the benefit or protection of another. *Yager v. Illinois Bell Telephone Co.*, 281 Ill. App. 3d 903, 907 (1996). The existence of a duty is a question of law. *Yager*, 281 Ill. App. 3d at 907.

■ In the case at bar, plaintiff claimed that defendant failed to keep a proper lookout, failed to keep her vehicle under control, drove in a reckless manner, and failed to yield the right-of-way. At the time of the accident, plaintiff was traveling southbound on St. Anthony's and did not have a stop sign. Defendant, whose course of movement was controlled by a yield sign, turned left onto St. Anthony's and collided with plaintiff. The facts are undisputed that plaintiff had the right-of-way as between herself and defendant at the moment of the collision. It is also undisputed that defendant owed plaintiff a duty to yield the right-of-way and to keep a proper lookout.

The next element to consider is whether defendant breached the duties she owed plaintiff. Defendant testified that she pulled into the intersection, that she collided with plaintiff's car, and that the accident would not have occurred if she had yielded the right-of-way to plaintiff. Here, where plaintiff had the right-of-way as a matter of law,

defendant breached her duty to yield and her duty to keep a proper lookout.

The final element is whether defendant's breaches of duty are the proximate cause of plaintiff's injuries. Since defendant admitted that the accident would not have occurred if she had not pulled into the intersection when she did and since there is no other evidence to show that plaintiff's injuries were caused in any other way, the proximate-cause element was also established as a matter of law.

We hold that the evidence, when viewed in the light most favorable to defendant, meets the *Pedrick* standard. Therefore, the trial court properly granted plaintiff's motion for a directed verdict on the issue of liability.

Affirmed.

GOLDENHERSH and CHAPMAN, Melissa, JJ., concur.