MARY E. BAKER, Plaintiff-Appellee, v. BRADLEY R. HUTSON, Defendant-Appellant.

Fifth District    No. 5—01—0761

Opinion filed August 20, 2002.

Brad K. Bleyer, of Marion, for appellant.

John Womick, of Womick Law Firm, Chtrd., of Carbondale, for appellee.

PRESIDING JUSTICE MAAG delivered the opinion of the court:

Mary E. Baker (plaintiff) filed an action against Bradley R. Hutson (defendant) alleging that she suffered personal injuries arising from an automobile accident caused by defendant's negligent operation of his motor vehicle. Defendant admitted negligence and the case proceeded to a trial on damages. At the close of the evidence, the circuit court of Jackson County directed a verdict in favor of plaintiff on the issues of causation and past medical expenses, and it assessed $8,632.90 as the reasonable expenses for necessary medical care. The remaining elements of damage were submitted to the jury, which assessed an additional $42,000 in damages for future medical care, lost earnings, pain and suffering, and disability. On appeal, defendant claims that the trial court erred in granting a directed verdict on the issues of causation and past medical expenses and in giving a jury instruction and a verdict form that combined "disability" and "loss of a normal life" as an element of damages.

The cause arises from a motor vehicle accident that occurred on January 23, 1996. Defendant's negligence was not disputed. During the trial, defendant testified that he failed to stop at a red light at an intersection in Carbondale, Illinois. Defendant stated that his vehicle struck the passenger side of plaintiff's vehicle.

Plaintiff was transported by ambulance to Carbondale Memorial Hospital. She was examined by Dr. Sharon Pelton, an emergency room physician. Following an extensive evaluation, plaintiff was released. Plaintiff, then a student at Southern Illinois University at Carbondale, was instructed to return to the emergency room immediately if her symptoms worsened. She was also instructed to return to the emergency room or to go to the Southern Illinois University (SIU)

clinic in a few days for a precautionary follow-up evaluation. Plaintiff testified that she did not remember the accident and had a limited recollection of being treated in the emergency room. She testified that she did not recall receiving any instructions to return for a follow-up evaluation.

Within a few days of the accident, plaintiff hired the Womick law firm to represent her. A member of the firm referred plaintiff to a chiropractor, Dr. Brian Woodard. Plaintiff saw Dr. Woodard on a regular basis for four or five months. She was released in June 1996 without restrictions. Plaintiff had no treatment from mid-June 1996 through the spring of 1997. Plaintiff testified that her symptoms began to increase in May 1997. She complained of headaches and stiffness and soreness in the neck and upper back region. Because of the worsening of symptoms, she began to treat three times per week with Dr. Stephen Zasadny, a chiropractor who had treated her parents. At the time of the trial, plaintiff was treating with Dr. Zasadny about once every six weeks for maintenance and to quell her symptoms. Plaintiff testified that the treatment temporarily alleviates the headache and the neck stiffness. She stated that the discomfort returns within four to six weeks after a treatment. Plaintiff also stated that the soreness in her neck and the headaches worsen when she is more active. Plaintiff testified that she was evaluated in March 2001 by Dr. David Birnbaum, a family practitioner in Chicago, Illinois, at her lawyer's direction. After the evaluation, Dr. Birnbaum prescribed a muscle relaxer. Plaintiff testified that the medication seemed to reduce the severity of the symptoms.

At the time of the trial, plaintiff was receiving periodic chiropractic treatment and taking the medication to control her symptoms. Plaintiff testified that she continues to work and to carry on her usual activities, but she noted that she does not have the flexibility and movement that she had before the accident. She stated that she limits her lifting and other strenuous activities to avoid aggravating her symptoms.

During cross-examination, plaintiff admitted that she did not return to the emergency room or visit the SIU clinic. Plaintiff stated that she retained a lawyer before she obtained follow-up medical care and that she was referred to Dr. Woodard by her attorneys. She also admitted that during the first visit to Dr. Woodard she filled out a patient questionnaire. In response to a question about the purpose of her visit, she wrote, "to find any injuries due to the automobile accident."

The depositions of Dr. Woodard and Dr. Birnbaum were read to the jury as a part of plaintiff's case. Dr. Woodard testified that he took

X rays and examined plaintiff. Based upon the evaluation, Dr. Woodard concluded that plaintiff had suffered soft tissue injury to her neck and upper back. He treated her with chiropractic manipulation and electrical stimulation therapy. A few months later, he instituted a rehabilitative program in addition to the ongoing chiropractic treatments. The rehabilitation was designed to strengthen the injured muscles. Dr. Woodard released plaintiff in June 1996 with a favorable prognosis. Dr. Woodard testified that plaintiff was "95% improved," but he expected that she would have periodic exacerbations of her symptoms. During cross-examination, defendant questioned Dr. Woodard about the necessity of obtaining additional X rays, given that plaintiff had been X-rayed days earlier in the emergency room. Defendant also questioned the number and the nature of the treatments provided to plaintiff. Defendant established that plaintiff was referred to Dr. Woodard by her lawyer and that plaintiff had completed a new-patient questionnaire in which she wrote that the purpose of her first visit was "to find any injuries due to the automobile accident."

Dr. David Birnbaum, a physician specializing in family practice in Chicago, testified that he first saw plaintiff on March 6, 2001. At that time, plaintiff complained of neck and upper back pain. Dr. Birnbaum stated that when he examined plaintiff, he noted muscle spasm in her neck and shoulders. He diagnosed fibrositis and recommended that plaintiff use ice packs and take a prescription muscle relaxer. He advised her to refrain from activities that seemed to cause a flare-up in her symptoms. Dr. Birnbaum opined that plaintiff's condition was caused by the 1996 auto accident. He based his opinion on the history given by plaintiff. Dr. Birnbaum testified that he expected that plaintiff's symptoms would "wax and wane" and that she would require treatment for the condition throughout her life. He also stated that as a result of the injury she was at risk to develop arthritis at an earlier age. Dr. Birnbaum testified that in terms of future treatment, the symptoms could be minimized and the periodic flare-ups controlled with medication and chiropractic treatments as needed. During cross-examination, Dr. Birnbaum testified that he first examined plaintiff more than five years after the accident. He stated that his opinion that plaintiff's symptoms resulted from the accident was based on the history given by plaintiff. Dr. Birnbaum also testified that he did not restrict plaintiff from performing any of her normal activities. During cross-examination, defendant established that plaintiff's lawyer referred plaintiff to Dr. Birnbaum and that Dr. Birnbaum had reviewed cases for plaintiff's lawyer in the past.

The defense presented the deposition of Dr. Sharon Pelton, a

board-certified, emergency room physician. Dr. Pelton testified that she evaluated plaintiff on January 23, 1996. At that time, plaintiff gave a history indicating that she had been in a car accident that day and that her car had been hit on the passenger side. Plaintiff denied hitting her head and denied a loss of consciousness. Dr. Pelton stated that the paramedics who had responded to the accident reported that plaintiff was a little disoriented at the scene, that she did not remember the accident, and that she complained of a headache and pain in her right knee. The emergency room nurse also reported that plaintiff complained of a headache and had trouble remembering the accident. Dr. Pelton examined plaintiff and noted mild tenderness on the right side of the neck. She ordered X rays to rule out damage to the cervical spine. The initial X ray showed a "little lack of normal curvature" in the cervical spine. Subsequent flexion and extension X rays ruled out damage to the spine and ligaments. The neurological examination was normal. Dr. Pelton attributed the abnormal curvature found on the initial X ray to muscle spasm. Dr. Pelton discharged plaintiff with instructions to take off from work or school for two days. Dr. Pelton directed plaintiff to stay with a responsible adult who could check on her during the evening and throughout the night. Dr. Pelton explained that she gave this precautionary instruction because of the reports that plaintiff could not remember the accident. Dr. Pelton also instructed plaintiff to follow up in the emergency room or in the SIU clinic in a few days as a precautionary measure and to return to the emergency room immediately if her headache worsened or other symptoms developed. Plaintiff did not return to the emergency room. Dr. Pelton testified that the prognosis upon plaintiff's discharge was very good. Based upon the results of the examination, Dr. Pelton did not think that plaintiff had sustained any permanent injuries. On cross-examination, Dr. Pelton stated that based upon the X rays she ruled out damage to the bones and ligament structures in the neck. She testified that based upon X-ray results she could not rule out injury to muscle tissue.

At the close of the evidence, the trial court informed the jury that it had directed a verdict in favor of plaintiff on two disputed issues— causation and past medical expenses. The trial court indicated that it had awarded all of plaintiff's medical expenses, a total of $8,632.90, and the court instructed the jury to consider the remaining elements of damage. The jury was given an itemized verdict form. The number "$8,632.90" was typed on the line corresponding to past medical bills and expenses. The jury assessed an additional $42,000 in damages for future medical care, lost earnings, pain and suffering, and disability. A judgment was entered for plaintiff in the sum of $50,632.90.

■ Before turning to the issues raised in this appeal, we pause to address another matter. In ruling on plaintiff's motion for a directed verdict on causation and past medical expenses, the trial court relied on a recent unpublished order issued by this court pursuant to Illinois Supreme Court Rule 23 (166 Ill. 2d R. 23). Rule 23(e) expressly provides, "An unpublished order of the court is not precedential ***." 166 Ill. 2d R. 23(a). We recognize that certain individuals in the Illinois legal community advocate allowing unpublished Rule 23 orders to be cited and used as some authority in support of legal arguments. See, *e.g.*, J. Rooney, *Lawyers Debate What Appeals Court Leaves Unsaid*, 148 Chi. Daily L. Bull., April 27, 2002, at 5; M. Reagan, *Supreme Court Rule 23: The Terrain of the Debate and a Proposed Revision*, 90 Ill. B.J. 180 (2002). We express no view on this subject, inasmuch as Rule 23 was promulgated and adopted by the Illinois Supreme Court. In this case, the trial court's reliance upon an unpublished order, in contravention of Rule 23, was error and should not be repeated.

In the first issue on appeal, defendant contends that the trial court erred in directing a verdict for plaintiff on the issues of causation and past medical expenses. In addressing this claim, we will first review the principles of law that bear upon this issue.

■ The propriety of a directed verdict must be judged according to the standard established by the Illinois Supreme Court in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967), and reaffirmed in *Maple v. Gustafson*, 151 Ill. 2d 445, 603 N.E.2d 508 (1992). A verdict should be directed only in those cases in which all of the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14. A trial court has no right to enter a directed verdict if any evidence, together with reasonable inferences to be drawn therefrom, demonstrates a substantial factual dispute or if the assessment of the credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Maple*, 151 Ill. 2d at 453-54, 603 N.E.2d at 512.

The *Pedrick* standard does not require that a verdict be directed merely because the defendant has not introduced evidence in his or her own behalf or has failed to dispute facts presented by the plaintiff. See *Galarza v. Melter*, 116 Ill. App. 2d 173, 178, 253 N.E.2d 469, 471 (1969). Where there is no dispute regarding the facts in evidence but where different inferences may legitimately be drawn from those facts, the question is one for the jury and a verdict should not be directed. See *Galarza*, 116 Ill. App. 2d at 178, 253 N.E.2d at 471; *Hirn v. Edgewater Hospital*, 86 Ill. App. 3d 939, 946, 408 N.E.2d 970, 976 (1980) (and cases cited).

■ The long-standing rule is that positive direct testimony may be contradicted and discredited by adverse testimony, circumstantial evidence, discrepancies, omissions, or the inherent improbability of the testimony itself. See *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 354, 654 N.E.2d 1365, 1375 (1995); *Lobravico v. Checker Taxi Co.*, 84 Ill. App. 2d 20, 27, 228 N.E.2d 196, 200 (1967). The fact finder is not bound to believe a witness when, based upon all of the other evidence or the inherent improbability or contradictions in the testimony, the fact finder is satisfied of the falsity of the testimony. See *Larson v. Glos*, 235 Ill. 584, 587, 85 N.E. 926, 927 (1908). However, the fact finder may not arbitrarily or capriciously reject unimpeached testimony. *Larson*, 235 Ill. at 587, 85 N.E. at 927. Where the testimony of a witness is neither contradicted by direct adverse testimony or by circumstances nor inherently improbable and the witness has not been impeached, the testimony cannot be disregarded by the fact finder. *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127 (1981).

■ In Illinois, the question of damages is peculiarly one of fact for the jury. *Flynn v. Vancil*, 41 Ill. 2d 236, 240, 242 N.E.2d 237, 240 (1968). The rules regarding the admissibility of evidence of medical expenses and the burden of proving medical expenses are well established. In order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature. See *North Chicago Street Ry. Co. v. Cotton*, 140 Ill. 486, 498, 29 N.E. 899, 902 (1892); *Wicks v. Cuneo-Henneberry Co.*, 319 Ill. 344, 349, 150 N.E. 276, 279 (1925).

■ When evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is *prima facie* reasonable. *Flynn v. Cusentino*, 59 Ill. App. 3d 262, 266, 375 N.E.2d 433, 436 (1978). A party seeking the admission into evidence of a bill that has not been paid can establish reasonableness by introducing the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services. Once the witness is shown to possess the requisite knowledge, the reasonableness requirement necessary for admission is satisfied if the witness testifies that the bills are fair and reasonable. *Diaz v. Chicago Transit Authority*, 174 Ill. App. 3d 396, 528 N.E.2d 398 (1988).

The *prima facie* reasonableness of a paid bill can be traced to the enduring principle that the free and voluntary payment of a charge

for a service by a consumer is presumptive evidence of the reasonable or fair market value of that service. See *Wicks*, 319 Ill. at 349, 150 N.E. at 279; *Lanquist v. City of Chicago*, 200 Ill. 69, 73-74, 65 N.E. 681, 683 (1902). The premise is that a consumer will not willingly pay an unreasonable or unusual charge for a service. When a bill has been paid, there is little reason to suspect that the charge is collusive or speculative. The defendant may rebut the *prima facie* reasonableness of a medical expense by presenting proper evidence casting suspicion upon the transaction. It must be emphasized that offering a paid bill or the testimony of a knowledgeable witness that a bill is fair and reasonable merely satisfies the requirement to prove reasonableness. The proponent must also present evidence that the charges were necessarily incurred because of injuries caused by the defendant's negligence. *Cotton*, 140 Ill. at 498-99, 29 N.E. at 902. Only then have the evidentiary requirements for admission into evidence been satisfied. Moreover, it is axiomatic that merely satisfying the minimum requirements for the admission of a bill into evidence does not conclusively establish that the amount of the bill in its entirety must be awarded to the plaintiff. The admission of the bill into evidence simply allows the jury to *consider* whether to award none, part, or all of the bill as damages.

With these rules in mind, we must determine whether the trial court erred in directing a verdict on the issues of causation and past medical expenses. The parties have not cited, nor has our research uncovered, any published Illinois decision that has considered whether a trial court is justified in directing a verdict on the specific amount of past medical bills to be awarded in a jury case. We have uncovered two published decisions in which the appellate court has considered whether a trial court was justified in directing a verdict on *property* damages. See *Frisch Contracting Service Corp. v. Northern Illinois Gas Co.*, 93 Ill. App. 3d 799, 807, 417 N.E.2d 1070, 1076 (1981); *Collgood, Inc. v. Sands Drug Co.*, 5 Ill. App. 3d 910, 920, 284 N.E.2d 406, 412 (1972).

In *Collgood, Inc.*, a decision from this district, the plaintiff sought to recover for smoke and water damage to personal property. The damage had resulted from a fire. At the close of the evidence, the trial court directed a verdict in favor of the plaintiff on the issue of liability and on the amount of damages sustained. *Collgood, Inc.*, 5 Ill. App. 3d at 913, 284 N.E.2d at 407. On appeal, this court was asked to consider whether the amount of damages in property injury cases ever becomes a question of law and, if so, whether the trial court was justified in directing a verdict on damages. *Collgood, Inc.*, 5 Ill. App. 3d at 920, 284 N.E.2d at 412. In that case, this court indicated that the issue had

not been previously addressed in Illinois. This court recounted the general rule that the question of damages is ordinarily one of fact for the jury, and it recognized that the discretion of the jury on an award of damages, though wide, was not unlimited. *Collgood, Inc.*, 5 Ill. App. 3d at 920, 284 N.E.2d at 412. This court concluded, "[A]lthough the question of the amount of damages is ordinarily best left to the jury, where the plaintiff offers substantial credible evidence to show the amount of his loss in damages to personal property and that evidence is both reasonable on its face and undisputed by the defendant, the trial court may be justified in directing a verdict ***." *Collgood, Inc.*, 5 Ill. App. 3d at 920, 284 N.E.2d at 413. After reviewing the evidence in the record, this court determined that the directed verdict on liability and the amount of damages was proper. *Collgood, Inc.*, 5 Ill. App. 3d at 920, 284 N.E.2d at 412.

In *Frisch Contracting Service Corp.*, the plaintiff sought to recover from two defendants for damages to a sewer system. *Frisch Contracting Service Corp.*, 93 Ill. App. 3d at 801, 417 N.E.2d at 1072. The trial court entered a directed verdict in favor of one of the defendants at the close of the plaintiff's case. At the close of the evidence, the trial court entered a directed verdict on liability and damages against the remaining defendant, and the court assessed the plaintiff's damages at $4,000. On appeal, the plaintiff claimed that the trial court erred in directing a verdict for damages of $4,000, when its evidence showed that its actual repair costs totaled more than $45,000. *Frisch Contracting Service Corp.*, 93 Ill. App. 3d at 805, 417 N.E.2d at 1075. After reviewing the record, our colleagues in the Second District concluded that the issue should have been submitted to the jury because there was a key factual issue regarding what constituted reasonable and necessary repairs and because the parties presented competent but conflicting evidence on that issue. *Frisch Contracting Service Corp.*, 93 Ill. App. 3d at 807-08, 417 N.E.2d at 1076-77. In considering the issue, the Second District reviewed the *Collgood, Inc.*, decision and agreed that there may be occasions when a property damage question can be decided as a matter of law. *Frisch Contracting Service Corp.*, 93 Ill. App. 3d at 807, 417 N.E.2d at 1076. However, the court urged caution and restraint by trial courts in directing verdicts on property damage questions, because of the lack of conclusiveness of damage evidence even when no contrary evidence is offered. *Frisch Contracting Service Corp.*, 93 Ill. App. 3d at 807, 417 N.E.2d at 1076.

We agree with the admonition of our colleagues in the Second District that a directed verdict on damages in any case should be undertaken with extreme caution and should be subject to exacting scrutiny on review due to the nature of damages evidence. See *Frisch*

*Contracting Service Corp.*, 93 Ill. App. 3d at 807, 417 N.E.2d at 1076. The fact that evidence regarding damages in personal injury cases lacks precision is hardly a novel notion. It is difficult to quantify pain and suffering, disfigurement, and disability. An assessment of medical expenses might also lack precision because reasonable minds can differ in regard to whether a plaintiff's complaints and condition were caused by the defendant's negligence, whether the treatment provided was necessary, and whether the charges for that treatment were reasonable. Jurors are instructed that they can consider, among other things, the demeanor, bias, and interest of a witness when they assess his or her credibility and the weight to be given the testimony. See Illinois Pattern Jury Instructions, Civil, No. 2.01 (2000). Jurors are also instructed to utilize their knowledge gained from their ordinary experiences in life to decide what facts have been proven. See Illinois Pattern Jury Instructions, Civil, No. 1.01 (2000). Depending upon their determinations about credibility and their ordinary experiences in life, jurors must decide whether the plaintiff's complaints are exaggerated or genuine, whether certain treatment was unnecessary or justified, or whether various charges were unreasonable or reasonable. See *Giddings v. Wyman*, 32 Ill. App. 2d 220, 223-24, 177 N.E.2d 641, 643 (1961). Credibility issues and circumstances surrounding the incident or the treatment may give rise to varying inferences. Though we are not prepared to say that a directed verdict on damages in a personal injury case could never be sustained, the number of occasions where that action would be justified is minute, and the case at bar is not one of them.

After reviewing the record, we have determined that the trial court erred in directing a verdict on the issues of causation and damages. Whether certain medical services were necessary and whether plaintiff's complaints were causally related to the accident were disputed issues. The record reveals that differing inferences could have been drawn from the testimony of the witnesses. A few examples, with reasonable inferences considered in a light favorable to defendant, will adequately illustrate the point. The fact that plaintiff's attorney referred plaintiff to Dr. Woodard and to Dr. Birnbaum is undisputed. Likewise, the evidence established that plaintiff did not follow the emergency room physician's recommendation to be reevaluated at the SIU clinic but that she did follow her lawyer's recommendation to treat with Dr. Woodard and, later, with Dr. Birnbaum. There was evidence that plaintiff completed a new-patient questionnaire in which she wrote that the purpose of her visit to Dr. Woodard was "to find any injuries due to the automobile accident." There was evidence that Dr. Woodard released plaintiff without restriction and that when

plaintiff was released, her condition was 95% improved. There was evidence that plaintiff did not receive any treatment for her symptoms for almost a year after Dr. Woodard released her and that Dr. Birnbaum's initial evaluation occurred more than five years after the accident. There was evidence that Dr. Woodard issued a billing statement for chiropractic services and a separate statement for rehabilitative services, even though the rehabilitative therapy was provided on the same date, during the same visit, and at the same office location as the manipulation. There was no evidence that plaintiff's medical bills were paid. Based upon the evidence and reasonable inferences, a jury could have concluded that plaintiff's treating doctors were financially interested in the outcome of the case and were therefore biased and incredible. A jury could have found that plaintiff overstated the severity or duration of her symptoms. A jury could have discounted Dr. Birnbaum's opinion of the cause of plaintiff's condition, due to the fact that his evaluation came five years after the automobile accident and was based solely on plaintiff's account of her history. A jury could have found that the emergency room physician was unbiased and had no interest in the case and could have accepted her findings over those of the other providers.

In deciding the facts, jurors have to consider the credibility of the witnesses, the reasonable inferences from the evidence, and the surrounding circumstances in light of their experiences in life. In this case, based upon the evidence and reasonable inferences, a jury could have reasonably concluded that plaintiff was not injured to the extent claimed, that some of the treatment she received was unwarranted or excessive, and that the charges for some of the treatment were unreasonable. Alternatively, a jury could have reasonably concluded that plaintiff was injured in the accident, that her condition resulted from the collision, that some or all of the treatment provided was necessary, and that some or all of the charges for the treatment were reasonable. Thus, the issues of causation and damages were ones of fact and not of law. The trial court erred in directing a verdict on the issues of causation and the past medical bills. In this opinion, we have determined only that there were disputed issues that should have been decided by the jury. None of the comments in this decision should be construed as an indication of what facts and inferences should be found or what result should be reached on a retrial.

In his next point, defendant contends that the trial court erred in giving an instruction which combined disability and the loss of a normal life as an element of damages. Specifically, defendant objected to the following instruction:

"The defendant has admitted liability[;] thus you must fix the

amount of money which will reasonably and fairly compensate the plaintiff for any of the following elements of damages proved by the evidence to have resulted from the occurrence, taking into consideration the nature, extent[,] and duration of the injury:

    a) the disability, including the loss of a normal life, experienced and reasonably certain to be experienced in the future;

    b) the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries;

    c) the reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment, and services reasonably certain to be received in the future;

    d) the value of earnings lost and the present cash value of a decrease in earning capacity.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

Defendant also objected to line (a) in verdict form A, which allowed the jury to assess damages for "the disability, including the loss of a normal life, experienced and reasonably certain to be experienced in the future." Defendant argued that disability and the loss of a normal life were to be given in the alternative and not as a combined element of damages.

In response, plaintiff argued that the tendered instruction more accurately states the law than either of the alternatives contained in the pattern instruction. Plaintiff argued that the evidence established that she was disabled and incapacitated to a degree because she suffered a physical infirmity which limited her ability to perform manual labor and that she suffered a decrease in her enjoyment of life because she was limited in her ability to perform her work and other activities which gave her pleasure and enjoyment in life. Plaintiff also claimed that defendant had not been prejudiced by the instruction.

■ Jury instructions are to be considered as a whole, and where the jury has not been misled and the defendant's rights have not been prejudiced by the irregularity, the alleged errors cannot serve as a basis for reversal. *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1136, 738 N.E.2d 542, 555 (2000). A reviewing court will not reverse a case on the basis of an improper instruction unless it is able to conclude that the instruction clearly misled the jury. See *King v. Clemons*, 264 Ill. App. 3d 138, 143, 636 N.E.2d 1062, 1066 (1994). In this case, defendant has not shown that the instruction unduly emphasized an element of damage, misled the jury, or prejudiced his case. Nevertheless, we believe that additional discussion is appropriate because the issue is likely to arise upon a retrial.

■ Disability and the loss of a normal life have been recognized as

elements of compensable damages. *Hendrix v. Stepanek*, 331 Ill. App. 3d 206, 771 N.E.2d 559 (2002); *Turner v. Williams*, 326 Ill. App. 3d 541, 551, 762 N.E.2d 70, 79 (2001). "Loss of a normal life" was approved as an alternative to "disability" because of concerns that the term "disability" was often misunderstood and led juries to disregard a proper element of damages or to duplicate damages. *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 936-38, 631 N.E.2d 1269, 1277-79 (1994), citing M. Graham, *Pattern Jury Instructions: The Prospect of Over or Undercompensation in Damage Awards for Personal Injuries*, 28 DePaul L. Rev. 33, 50 (1978).

■ The term "loss of a normal life" is a part of the Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2000) (hereinafter IPI Civil (2000) No. 30.04.01). The Notes on Use following IPI Civil (2000) No. 30.04.01 state that "disability" and "loss of a normal life" are alternatives for a single element of damages. IPI Civil (2000) No. 30.04.01, Notes on Use, at 131. The Notes on Use recommend that only one of these terms be inserted in the "measure of damages" instruction. IPI Civil (2000) No. 30.04.01, Notes on Use, at 131. In the Comment to IPI Civil (2000) No. 30.04.01, the committee on civil jury instructions specifically recommends "that either 'disability' or 'loss of a normal life' be used, but not both." IPI Civil (2000) No. 30.04.01, Comment, at 132. Whether to instruct the jury on "disability" or on "the loss of a normal life" depends on the nature of the evidence at the trial and on which term more accurately describes the damages evidence and would be less confusing to the jury. *Turner*, 326 Ill. App. 3d at 551, 762 N.E.2d at 79. "Loss of a normal life" instructions are appropriately used where the evidence suggests that the injury has resulted in a diminished ability to engage in the avocations and activities of life, including the inability to pursue pleasurable aspects of life, such as recreation or hobbies. See *Smith*, 260 Ill. App. 3d at 936, 631 N.E.2d at 1279; *Turner*, 326 Ill. App. 3d at 551-52, 762 N.E.2d at 79.

■ Pursuant to Supreme Court Rule 239(a) (134 Ill. 2d R. 239(a)), "Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law." In the case at bar, there is nothing in the record to indicate that the trial court determined that the pattern instruction did not adequately state the law. Plaintiff has not cited any reported decision that approved the modified instruction she tendered. The evidence in this record suggests that the pattern instruction is proper and that the appropriate element to be used is "loss of a normal life." However, the trial court,

on remand, will ultimately determine which alternative is more appropriate based upon the evidence. The trial court is directed to consider the proposed instructions tendered by the parties in light of the Notes on Use and Comment to IPI Civil (2000) No. 30.04.01. The question of whether a modified instruction, such as the one submitted here, may be appropriate in another case is left for another day.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for a new trial on the issue of damages.

Reversed; cause remanded.

RARICK and KUEHN, JJ., concur.