Rule 23 order filed
May 19, 2010;
Motion to publish granted
June 22, 2010, corrected
August 9, 2010

NO. 5-08-0542

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| TIFFANY ANDERSON, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Jackson County. |
| | ) |
| v. | ) No. 07-L-74 |
| | ) |
| SAEED ZAMIR and SAADIA ZAMIR, | ) Honorable |
| | ) E. Dan Kimmel, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

Tiffany Anderson appeals from the trial court's September 19, 2008, denial of her motion for a new trial from a final judgment after a jury trial, which awarded her $12,500 in damages resulting from injuries and damages sustained in a motor vehicle accident. We reverse and remand.

On September 22, 2005, Tiffany was involved in a motor vehicle accident with Saadia Zamir. Tiffany was rear-ended. Her head hit the steering wheel. Tiffany's car was pushed forward into the car directly in front of her vehicle. Her vehicle was towed.

Although sore immediately following the accident, she did not seek medical attention right after the accident. Later that day, Tiffany went to the hospital to try to obtain medical care related to a headache from which she had suffered since the accident. Her neck was also sore at this time. Overall, her symptoms had gotten worse since the time of the accident. That evening at the hospital, she was prescribed a neck brace and pain medication.

Thereafter, she followed up with the medical clinic of the student health center at Southern Illinois University at Carbondale (SIU-C), where she was then a student. She

1

testified that she complained of pain stemming from her lower back and running up into her neck, primarily on the left side of her body. Dr. Rollin Perkins, a sports medicine physician for the university's health services, was the physician assigned to oversee Tiffany's care and treatment. She was treated with pain medication and some physical therapy and home exercises for about six months. In the spring of 2006, she had a cervical MRI, which the radiologist determined was negative. In July 2006, Tiffany returned to the student health center medical clinic with specific left shoulder complaints. Tiffany was referred to Dr. Treg Brown, an orthopedic specialist at the clinic. An MRI of her left shoulder revealed a tear in the labrum of her left shoulder, and in December 2006, Tiffany underwent left shoulder surgery to repair the labrum tear. The surgery was orthoscopic and left Tiffany with several small scars on her left shoulder. After the surgery, Tiffany underwent physical therapy.

Tiffany provided testimony about the pain she experienced from the injuries and following the surgery. Tiffany testified to the activities in which she had engaged before the accident and the limitations she experienced due to these injuries.

Tiffany filed suit against the Zamirs for personal injuries resulting from the accident. The Zamirs admitted liability. The case went to trial on the issue of damages only. The trial was held for two days beginning on July 21, 2008. Medical bills totaling $28,804 were admitted into evidence. At the conclusion of the trial, the jury awarded Tiffany a total of $12,500–only $5,000 for medical bills and the balance of $7,500 for pain and suffering. Tiffany filed a motion for a new trial, which the court denied on September 19, 2008.

Several issues have been raised on appeal relative to the verdict. We conclude that the issue of the adequacy of the jury's damages award is dispositive.

The trial court's ruling on a motion for a new trial should not be reversed on appeal unless the party who is seeking the new trial can affirmatively show that the court clearly abused its discretion. *Maple v. Gustafson*, 151 Ill. 2d 445, 455, 603 N.E.2d 508, 513 (1992).

2

In determining whether the trial court abused its discretion, we must consider whether the jury's verdict was supported by the evidence and whether the complaining party was denied a fair trial. *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513.

The amount of money a jury awards "is peculiarly an issue of fact for the jury to determine" and is entitled to substantial deference. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 470, 605 N.E.2d 493, 509 (1992); *Zuder v. Gibson*, 288 Ill. App. 3d 329, 334, 680 N.E.2d 483, 487 (1997). If the jury received proper instruction and otherwise had a reasonable basis for its award, the appellate court will not disturb the verdict. *Lee*, 152 Ill. 2d at 470, 605 N.E.2d at 510. Although there is no precise formula for determining if a monetary award is fair and reasonable, the following factors should be considered: the extent of the injuries suffered and the degree of the permanency of those injuries, the plaintiff's age, the possibility of future difficulties, the amount of medical expenses involved, and the restrictions upon the plaintiff's life as a result of the injuries suffered. *Epping v. Commonwealth Edison Co.*, 315 Ill. App. 3d 1069, 1072, 734 N.E.2d 916, 918 (2000) (citing *Richardson v. Chapman*, 175 Ill. 2d 98, 114, 676 N.E.2d 621, 628 (1997)). A jury's damages award cannot be overturned unless it is shown that the jury clearly ignored an established element of damages, that the verdict was the result of passion or prejudice, or that the award bears no reasonable relationship to the loss that was suffered. *Zuder*, 288 Ill. App. 3d at 334, 680 N.E.2d at 487 (relying on *Gill v. Foster*, 157 Ill. 2d 304, 315, 626 N.E.2d 190, 195 (1993)).

In this case, liability was admitted, and essentially the cervical injury was conceded, along with damages related to that injury. What the defendants contested at the trial was the shoulder injury. The only medical evidence offered at the trial was presented by Tiffany's attorney in her case. The defendants' attorney merely cross-examined Tiffany's physicians and presented no independent evaluation of Tiffany's injuries, her medical care, her medical

3

bills, or her prognosis. A review of the cross-examination of Tiffany's physicians reflects that neither physician wavered in his opinion relative to the cause of the shoulder injury. We find that the testimony of both physicians is of great importance to our consideration of the proof relative to the damages award, and so we review that testimony now.

Dr. Rollin Perkins testified in an evidence deposition, and that deposition was read to the jury. He was able to provide additional details to fill in gaps in Tiffany's own version of her medical history. Dr. Perkins has been employed at the SIU-C student health center medical clinic since September 1982. He explained that while he had not examined Tiffany before April 17, 2006, she had been a patient of the clinic and had been treated by his partners. She was originally seen in September 2005 by a physician assistant. Dr. Perkins reviewed all the notes in Tiffany's chart before his April 17, 2006, examination. She was referred to Dr. Perkins by the physician assistant who had evaluated her and followed her through prescribed physical therapy. When Dr. Perkins initially examined her, Tiffany described cervical pain that she had experienced subsequent to the September 2005 motor vehicle accident. Tiffany described going through two separate stints of physical therapy and achieving a certain amount of relief, only to have the pain flare up within two to three weeks after the discontinuation of the therapies. On April 17, 2006, Dr. Perkins conducted an examination, noting a limited range of motion in all six ranges–forward flexion and extension, lateral bending to the left and to the right, and rotation to the left and to the right. He felt that her problem was more related to musculature rather than to bone or nerve issues. She did not have a normal cervical curvature, which Dr. Perkins linked to a muscle spasm related to the injuries sustained in the accident. Because so much time had passed since her accident, Dr. Perkins ordered the cervical MRI to rule out a problem other than the suspected muscular issues. Dr. Perkins' diagnosis on this date was cervical spine injury. Dr. Perkins explained that with this type of injury, it would not be uncommon to go a significant period

4

of time before the patient would be fully recovered.

Following the MRI, Dr. Perkins again met with Tiffany on April 24, 2006. She had restarted physical therapy and reported that it was helping. She had been taking a prescription muscle relaxant prescribed by Dr. Perkins. Physical therapy continued until May 23, 2006. On May 24, 2006, Dr. Perkins reexamined Tiffany, who reported that she was doing better. She was instructed to return in July.

Tiffany returned to the clinic in July 2006 and was seen by a partner, Dr. Schonewolf, who was also a sports medicine physician. This appointment took place on July 25, 2006, and at that appointment, Tiffany complained about her left shoulder. Dr. Schonewolf wrote in his notes that there had been no trauma, but he suspected that she did have a shoulder injury. Dr. Schonewolf prescribed anti-inflammatory and pain medications. Three days later, on July 28, 2006, Tiffany followed up with Dr. Perkins. She told Dr. Perkins that while her cervical pain had improved, the shoulder pain seemed new. Dr. Perkins conducted a physical examination and found that there was a muscle spasm in the left trapezius muscles. At that time, Dr. Perkins did not believe that the shoulder condition was connected to the motor vehicle accident, and he felt that she had a viral infection of a shoulder muscle and of a related nerve.

Dr. Perkins saw Tiffany next on August 2, 2006, and on that date she reported improved shoulder symptoms. She did not return until November 14, 2006, at which time her shoulder condition had deteriorated. Dr. Perkins determined that Tiffany's left shoulder was loose in the joint with excessive motion downward in the anterior and posterior direction. He also determined that the SLAPrehension and relocation test was positive. Dr. Perkins explained that these examination findings suggested that Tiffany had a torn labrum and laxity of the joint. This type of injury is typically the result of trauma. In Dr. Perkins' opinion, the possible shoulder injury was related to the motor vehicle accident. On this date,

5

he ordered an MRI with an injection of dye. The results of her MRI were positive for a labral tear.

Dr. Perkins then referred Tiffany to an orthopedic surgeon, Dr. Treg Brown. Tiffany had surgery to repair the tear in December 2006, after which she had physical therapy to rehabilitate the shoulder. She continued with physical therapy into April 2007, after which her records come to an end, most likely because of graduation.

Dr. Perkins testified that Tiffany's shoulder injury was most probably caused by the September 2005 motor vehicle accident. Dr. Perkins explained that this late experience of symptoms is fairly common. Initially, the patient complains of cervical pain, and the patient simply does not experience the signs of laxity and shoulder pain until the cervical area starts to improve and the patient starts engaging in more activity.

Dr. Treg Brown testified at the trial that he had reviewed all of her records and found nothing in her records other than the motor vehicle accident to explain the shoulder injury that Tiffany sustained. He performed a labral repair at two sites–one site in the top front portion and one at an inferior site. Dr. Brown explained that through four small incisions, he was able to sew down the ligament to where it had been attached to the bone. Dr. Brown testified that Tiffany's complaints of ongoing shoulder problems after the repair could be consistent with this type of injury. Dr. Brown testified that her surgical care and all the medical bills associated therewith were related to the motor vehicle accident.

Illinois has long held to the rule that "positive direct testimony may be contradicted and discredited by adverse testimony, circumstantial evidence, discrepancies, omissions, or the inherent improbability of the testimony itself." *Baker v. Hutson*, 333 Ill. App. 3d 486, 493, 775 N.E.2d 631, 637 (2002). The jury does not have to believe a witness if the jury believes that the testimony is false based upon "all of the other evidence or the inherent improbability or contradictions in the testimony." *Baker*, 333 Ill. App. 3d at 493, 775 N.E.2d

6

at 637. However, the jury is also not allowed to arbitrarily reject unimpeached testimony. *Baker*, 333 Ill. App. 3d at 493, 775 N.E.2d at 637 (citing *Larson v. Glos*, 235 Ill. 584, 587, 85 N.E. 926, 927 (1908)). If the testimony of a witness is not "contradicted by direct adverse testimony or by circumstances nor inherently improbable and the witness has not been impeached, the testimony cannot be disregarded by the [jury]." *Baker*, 333 Ill. App. 3d at 493, 775 N.E.2d at 637 (citing *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127 (1981)).

In this case, we have carefully reviewed the only expert medical testimony on the subject of Tiffany's shoulder injury and its cause. Both physicians provided uncontradicted opinions within a reasonable degree of medical certainty that Tiffany's shoulder injury resulted from the September 2005 motor vehicle accident. All the medical bills related to the surgery were admitted into evidence, and the proper foundation for their reasonableness and necessity was provided to the jury. Tiffany's medical bills totaled $28,804, but the jury chose to ignore this uncontradicted evidence and award her only $5,000 for medical bills, presumably following the suggestion of the defendants' attorney that it award her damages only for her cervical injury. The defendants advanced the argument that the shoulder injury was not causally connected to the motor vehicle accident because of the delay between the motor vehicle accident and the report of specific shoulder pain. The defendants also sought to argue that the injury was related to a viral infection. While the propriety of asking these questions on cross-examination of the physicians is not in doubt, the problem is that neither physician agreed with the arguments advanced by the defendants' attorney. Initially, as a part of the differential-diagnosis process, Dr. Perkins referenced the viral infection, but subsequent testing unequivocally established that the shoulder symptoms were the result of the labrum tear and were not related to a viral infection. The only two physicians who testified in this case provided the jury a medical explanation for the delay in the experience

7

of specific shoulder symptoms. The virus argument is far from supported by the evidence and amounts to sheer speculation. Again, all the medical testimony introduced at the trial supported the theory that the shoulder injury was causally connected to the motor vehicle accident. No evidence contradicting this connection was introduced. The witnesses were not impeached, and they stood by their opinions of causation. Upon reviewing the testimony, we do not conclude that this medical testimony is inherently improbable.

We find that the jury's verdict simply bears no reasonable relationship to the injuries established by Tiffany at the trial, and accordingly, the damages award must be reversed. Furthermore, we conclude that the trial court abused its discretion in upholding this damages award in light of the only medical evidence introduced at the trial.

Because this issue is dispositive, we do not address any other issues raised on appeal.

For the foregoing reasons, the judgment of the circuit court of Jackson County is hereby reversed, and the cause is remanded for a new trial on the issue of damages.

Reversed; cause remanded.

SPOMER and STEWART, JJ., concur.

NO. 5-08-0542

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| TIFFANY ANDERSON, | ) Appeal from the<br>) Circuit Court of |
| Plaintiff-Appellant, | ) Jackson County.<br>) |
| v. | ) No. 07-L-74<br>) |
| SAEED ZAMIR and SAADIA ZAMIR, | ) Honorable<br>) E. Dan Kimmel, |
| Defendants-Appellees. | ) Judge, presiding. |

**Rule 23 Order Filed:** May 19, 2010
**Motion to Publish Granted:** June 22, 2010
**Opinion Filed**: June 22, 2010

**Justices**: Honorable Melissa A. Chapman, J.

Honorable Stephen L. Spomer, J., and
Honorable Bruce D. Stewart, J.,
Concur

**Attorney for Appellant**  John Womick, Womick Law Firm, Chtd., 501 Rushing Drive, Herrin, IL 62949

**Attorney for Appellees**  James B. Bleyer, Bleyer and Bleyer, 601 West Jackson Street, P.O. Box 487, Marion, IL 62959-0487