# Illinois Official Reports

## Appellate Court

---

*DiFranco v. Kusar*, 2017 IL App (1st) 160533

---

| | |
|---|---|
| Appellate Court Caption | GUISEPPINA DiFRANCO and EUGENIO DiFRANCO, Plaintiffs-Appellants, v. CONSTANCE KUSAR, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-16-0533 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | September 29, 2017<br><br>October 31, 2017<br>November 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-6288; the Hon. Edward S. Harmening, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Horvath & Weaver, P.C., of Chicago (John F. Horvath and Michael T. McCracken, of counsel), for appellants.<br><br>Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke and Jean M. Bradley, of counsel), for appellee. |

Panel                  PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1        Guiseppina DiFranco sued Constance Kusar to recover for injuries that plaintiff sustained in a motor vehicle accident.[1] At the jury trial, defendant admitted negligence, and thus the only issues at trial were whether defendant's negligence was the proximate cause of plaintiff's injuries and the amount of damages, if any. The jury entered a verdict in favor of plaintiff and awarded her $1000 for the reasonable expense of necessary medical care, treatment, and services received; $0 for the loss of normal life; and $0 for pain and suffering. The circuit court denied plaintiff's posttrial motion for a new trial. The circuit court also granted in part and denied in part plaintiff's posttrial motion for costs. On appeal, plaintiff contends that (1) the jury's damages award is against the manifest weight of the evidence, (2) the circuit court erred in denying her motion for a new trial, and (3) the circuit court erred in denying in part her posttrial motion for costs. We find no error and affirm.

¶ 2                                  BACKGROUND

¶ 3        The following facts were presented at trial.

¶ 4        On June 9, 2011, plaintiff was driving in stop-and-go traffic, and while stopped, her vehicle was struck from behind by a vehicle operated by defendant. The collision caused plaintiff's vehicle to hit the vehicle in front of hers. It also caused her body to move forward and backward, and her knees struck the dashboard. Immediately following the collision, she experienced pain in her neck, back, and arm. She was taken by ambulance to GlenOaks Hospital (GlenOaks). She testified that while she was in the emergency room, her pain was a 9 on a scale of 1 to 10. At GlenOaks, she was examined and instructed to follow up with her family physician, Edwin W. Anderson, M.D. On June 13, 2011, plaintiff followed up with Dr. Anderson.

¶ 5        Dr. Anderson's evidence deposition was admitted into evidence at trial. He testified that plaintiff told him that she had pain in her arm, neck, and back related to the June 9 collision. Dr. Anderson examined plaintiff and found tenderness in her lower back, a normal range of motion of the neck, a normal shoulder exam, a normal elbow exam, and tenderness in the right pelvis area. He stated that plaintiff reported she felt "moderate pain." He concluded that she sustained a cervical strain, an arm strain, a forearm strain, and a back strain. Dr. Anderson recommended that plaintiff undergo physical therapy and take over-the-counter pain relievers. According to plaintiff, she performed her physical therapy at GlenOaks.

¶ 6        Dr. Anderson examined plaintiff again on July 15, 2011. He stated that she complained of pain radiating down from her neck into her right arm and lower back. Dr. Anderson

---

[1] Although both Guiseppina and Eugenio DiFranco were plaintiffs below and are listed as appellants, the jury found in favor of Kusar and against Eugenio. Eugenio does not advance any argument on appeal with respect to any of his claims or the jury's verdict against him.

determined that this new complaint was related to the June 9 collision and that plaintiff sustained an injury to her lower back and neck from the collision. He recommended that she continue with her physical therapy and gave her prednisone for her inflammation and swelling. He also referred her to Dr. Lawrence Frank, a nonsurgical back doctor, because her condition was "worsening with physical therapy and not improving."

¶ 7 According to plaintiff, Dr. Frank recommended that she undergo physical therapy at GlenOaks, which she did for four months. After completing the physical therapy, Dr. Franks told plaintiff to follow up with Dr. Anderson if her pain continued. Plaintiff testified that she was still experiencing pain after January 12, 2012, and that her pain got worse.

¶ 8 Dr. Anderson examined plaintiff again on August 9, 2012, when she came in complaining of right arm and hand numbness. Dr. Anderson concluded that the pain was possibly nerve related, "either carpel tunnel or cervical radiculopathy," and his "working assumption" was that this was related to the June 9 collision. He recommended that plaintiff get an electromyelogram (EMG), which was performed at Alexian Brothers Medical Center. Based on the results of the EMG, Dr. Anderson concluded that plaintiff had "a pinched nerve in the cervical area as well as a right carpal tunnel syndrome" and that the pinched nerve was due to the June 9 collision.

¶ 9 On August 20, 2012, Dr. Anderson recommended that plaintiff undergo an MRI, the results of which demonstrated "multiple abnormalities in the cervical spine." Dr. Anderson stated that, based on his education and examinations of plaintiff, the course of treatment he recommended was necessary as a result of the June 9 collision.

¶ 10 Plaintiff testified that Dr. Anderson referred her to Dr. Rosenblatt, whom plaintiff described as a "bone specialist." Dr. Rosenblatt prescribed physical therapy, which plaintiff underwent at Athletico.

¶ 11 At trial, plaintiff offered into evidence bills she had received for treatment following the June 9, 2011, collision. In total, she was billed $29,331.88, which included amounts billed for the emergency room visit on June 9, 2011; her follow-up visits with doctors Anderson, Frank, and Rosenblatt; her physical therapy; all of her diagnostic testing; and her prescriptions.

¶ 12 Julie Johnson, a customer service supervisor from Adventist Midwest Health, with which GlenOaks is affiliated, testified that GlenOaks's bills reflected reasonable and customary charges for services rendered in the GlenOaks emergency room, as well as for X-rays, labs, and physical therapy. On cross-examination, Johnson stated that she did not know how much other hospitals charged for similar services. She acknowledged that GlenOaks uses current procedural terminology (CPT) codes, which were developed by the American Medical Association and which are used by all medical providers to mean the same thing for a geographical location. Johnson acknowledged that she would not know whether the CPT codes used on a GlenOaks bill accurately reflected the actual clinical services provided. Plaintiff's emergency room bills reflected that she was billed twice for X-rays and was billed under CPT code 99284, which designates a level 4 severe condition. Johnson also could not say why plaintiff was charged under CPT code 99288 for "direct advanced life support" and acknowledged that she could not say that such a charge was usual or customary under the circumstances.

¶ 13 Defendant presented the evidence deposition of Dr. Richard Rabinowitz, an orthopedic surgeon, as her expert witness. Dr. Rabinowitz testified that he had reviewed plaintiff's

medical records from both before and after the collision. Plaintiff's records showed documented complaints dating back to 2003 that were similar to the complaints plaintiff had after the collision. In 2003, she was diagnosed with cervical brachial syndrome, brachial neuralgia, myofacial pain, and cervical region pain, which Dr. Rabinowitz described as "pain about the neck and referred pain into the shoulder and arm." Plaintiff also had pain between her shoulder blades, as well as some finger numbness. In 2005, plaintiff presented to Dr. Anderson with complaints of "numbness and pain and tingling in the right arm into the right hand and wrist," which resulted in plaintiff being restricted from repetitive motion activities. In February 2009, plaintiff was seen by a Dr. Goldberg. Plaintiff presented with a collection of complaints, including numbness in her right hand and pain in her thumb, index finger, and middle finger and pain in her right shoulder, with no suggestion of trauma. Dr. Goldberg diagnosed plaintiff with carpel tunnel syndrome. In October 2009, Dr. Anderson had a series of phone conversations with plaintiff about an X-ray of her shoulder. He noted that she had neck pain near where her shoulder and neck meet but in a different area than what was reflected on the X-ray. In Dr. Rabinowitz's opinion, plaintiff's complaints from 2003 forward were part of the same continuum of symptoms. In November 2009, plaintiff again complained of pain in her neck and upper arm. Between June and August 2010, she again complained of pain in the neck and radiating into the shoulder, and in August 2010, she still had symptoms in those areas. Dr. Rabinowitz described plaintiff's pain in her neck, shoulder, and arm as "chronic."

¶ 14    Furthermore, on June 9, 2011, before the accident giving rise to the claims here, plaintiff called Dr. Anderson's office complaining about her right arm and hand falling asleep and having a burning sensation that would wake her up while sleeping, accompanied by numbness and tingling. Dr. Anderson's office called her back later that day saying that it sounded like a pinched nerve.

¶ 15    Dr. Rabinowitz also reviewed plaintiff's medical records from after the accident. In the emergency room, plaintiff complained of pain in the back of her neck that radiated into her right shoulder. The emergency room records did not reflect any prior history of neck, shoulder, or arm pain. The records stated that plaintiff was alert with no acute distress. An examination suggested a full range of motion in the upper extremities without pain or tenderness. An X-ray showed no acute injury, although it did show some degenerative change. Dr. Rabinowitz acknowledged that plaintiff was diagnosed in the emergency room as having a cervical strain and added that "the most troubling part is that there aren't the typical physical findings that we would see for [a cervical strain], but given her complaints and her continuum of care, I felt it was reasonable to assume based on her subjective complaints that she had a cervical strain." He explained that "there was no evidence of tenderness or spasm or significant restricted motion. There was no evidence of contusion." He agreed that "the treatment that she received relating to this cervical strain was appropriate and fair from the time of the automobile collision through her release from Dr. Frank in January of 2012." Dr. Rabinowitz did not state that the treatment plaintiff received was necessary.

¶ 16    On September 25, 2015, the jury found in favor of plaintiff and against defendant. The jury awarded plaintiff $1000 for "the reasonable expenses of necessary medical care, treatment, and services rendered." The jury awarded plaintiff $0 for "pain and suffering experienced as a result of the injuries," and $0 for "loss of a normal life experienced." Also

on September 25, 2015, the circuit court entered a judgment in favor of plaintiff on the jury's verdict.

¶ 17 Plaintiff filed a timely motion for a new trial, arguing that the jury's verdict was against the manifest weight of the evidence. Plaintiff also filed a motion for costs. On January 20, 2016, the circuit court denied the motion for a new trial and granted in part and denied in part plaintiff's motion for costs. The circuit court awarded plaintiff $2264 in costs ($567 in filing fees, $60 for service fees, and $1637 for the evidence deposition of Dr. Anderson) but did not award plaintiff an additional $243.67 in requested "witness fees." Plaintiff filed a timely notice of appeal from the jury's verdict, the denial of her motion for a new trial, and the partial denial of her motion for costs.

¶ 18                                              ANALYSIS

¶ 19 On appeal, plaintiff argues that the jury's verdict was against the manifest weight of the evidence because the jury ignored "proven elements of damages." She also argues that the circuit court abused its discretion by denying her motion for a new trial. We address these arguments together. She also argues that the circuit court abused its discretion by denying in part her posttrial motion for costs. We address this argument in turn.

¶ 20 Plaintiff's first argument on appeal is that the circuit court abused its discretion in denying her motion for a new trial because the jury's verdict was against the manifest weight of the evidence. She contends that the jury ignored "proven elements of damages" because Dr. Rabinowitz testified that the medical treatment she received from the date of the accident to her discharge by Dr. Frank, totaling $15,770.88, was "necessary and reasonable." According to plaintiff, Dr. Rabinowitz testified that the treatment "was necessitated by the collision and was reasonable and customary for the injuries she sustained." She argues that Dr. Rabinowitz testified that plaintiff sustained an "objective injury" as a result of the collision, specifically tenderness in her back, and that the treatment she received in the emergency room at GlenOaks was reasonable and necessary. She further contends that she received a medical bill from the emergency room totaling $3742.75, and therefore, the jury ignored a proven element of damages when it awarded her only $1000. Additionally, she argues that the jury's award of $0 for pain and suffering was against the manifest weight of the evidence because it was "uncontroverted" that she suffered an injury and that the medical treatment she received for that injury was "reasonable, customary, and necessary."

¶ 21 When ruling on a motion for a new trial, the circuit court weighs the evidence and determines if the jury's verdict is contrary to the manifest weight of the evidence. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 38. "A verdict is against the manifest weight of the evidence only where the opposite result is clearly evident or where the jury's findings are unreasonable, arbitrary and not based upon any of the evidence." (Internal quotation marks omitted.) *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 46. We will only reverse the circuit court's ruling on a motion for a new trial where the moving party affirmatively shows the circuit court abused its discretion. *Velarde v. Illinois Central R.R. Co.*, 354 Ill. App. 3d 523, 537-38 (2004). "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992).

¶ 22     The standard for an award of compensatory damages under Illinois law is whether a reasonable jury could have awarded the damages it did. *People ex rel. Department of Transportation v. Smith*, 258 Ill. App. 3d 710, 715-16 (1994). A reviewing court will overturn a jury verdict when damages are manifestly inadequate because the proven elements of damages were ignored or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. *Id.* Illinois courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury and that great weight must be given to the jury's decision. *Snelson v. Kamm*, 204 Ill. 2d 1, 36-37 (2003). "The mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate *** since the jury is free to determine the credibility of the witnesses and to assess the weight accorded to their testimony." *Montgomery v. City of Chicago*, 134 Ill. App. 3d 499, 502 (1985).

¶ 23     We conclude that the circuit court did not abuse its discretion by denying plaintiff's motion for a new trial because the jury's verdict was not against the manifest weight of the evidence, since a reasonable jury could conclude that not all of the treatment plaintiff received was reasonable and necessary and that she was not entitled to compensation for the full amount of the services for which she was billed. First, plaintiff's argument that the jury ignored "proven damages" is unfounded because the issues of whether the accident was the proximate cause of her injuries and whether the treatment she received was necessary were disputed. She repeatedly asserts that Dr. Rabinowitz testified that her treatment was "necessary," but her assertion is not supported by the record. Dr. Rabinowitz testified that, based on plaintiff's subjective complaints, he assumed that she suffered a cervical strain, although he qualified that assumption by stating that the physical findings in the emergency room records were not typical of a cervical strain. He further explained that GlenOaks's emergency room records contained no evidence of the typical signs associated with cervical strain, which include tenderness, spasm, significant restricted motion, and contusion. Dr. Rabinowitz acknowledged that the treatment plaintiff received from the time she went to the emergency room on the date of the accident to the time she was discharged by Dr. Frank was appropriate, but he never agreed that it was necessary. The questions of whether defendant's negligence was the proximate cause of plaintiff's injuries and whether the treatment she received for those injuries was reasonable and necessary were disputed at trial. We therefore reject plaintiff's claim that the jury ignored "proven damages."

¶ 24     Furthermore, the jury heard testimony from which it could conclude that plaintiff lacked credibility. The jury heard that plaintiff did not provide the GlenOaks emergency room physicians with a history of her neck, back, and shoulder pain, including the numbness she experienced immediately prior to the accident. Plaintiff testified that she experienced "minor aches and pains" before the accident. But the jury also heard that plaintiff repeatedly sought treatment for pain in those areas since 2003. Plaintiff testified that when she was in the emergency room at GlenOaks, her pain was a 9 out of 10, but the GlenOaks emergency room records stated that she was not in any acute distress following the accident. Here, the jury heard all of the evidence and determined that plaintiff was entitled to compensation for some, but not all, of the treatment she received for the injury she sustained in the accident.

¶ 25     Plaintiff relies on *Anderson v. Zamir*, 402 Ill. App. 3d 362 (2010), to support her argument that she is entitled to a new trial. *Anderson* is distinguishable. There, the plaintiff sued to recover for injuries she sustained to her neck and shoulder in a car accident. The

defendants admitted liability for the injury to plaintiff's neck but contested liability as to the plaintiff's shoulder injury. *Id.* at 364-65. At trial, the plaintiff's physicians testified that the plaintiff's shoulder injury was caused by the accident. *Id.* at 365-67. The defendants presented no evidence to contradict the plaintiff's evidence. *Id.* at 368. Despite the uncontested evidence related to causation and uncontested evidence that the plaintiff's nearly $29,000 in medical bills were necessary and reasonable, the jury awarded the plaintiff only $5000 in damages. *Id.* We reversed and remanded for a new trial on the issues of damages, finding that "the jury's verdict simply bears no reasonable relationship to the injuries established by [the plaintiff] at the trial, and accordingly, the damages award must be reversed." *Id.* Here, defendant presented contrary evidence from which the jury could conclude that plaintiff had preexisting pain in her neck, shoulder, and back and that the accident was not the cause of all of plaintiff's injuries. Furthermore, the jury heard testimony that called into doubt whether all of the emergency room charges were necessary or reasonable. We find that *Anderson* is factually distinguishable and therefore does not control the outcome here.

¶ 26    We also find unpersuasive plaintiff's reliance on *Tipsword v. Johnson*, 59 Ill. App. 3d 834 (1978). There, plaintiffs sued to recover for injuries sustained in an automobile accident. The plaintiffs went to the emergency room, where they were diagnosed as having suffered "inertia strain of the neck." *Id.* at 835. The jury found that the defendants were liable for plaintiff's injuries but awarded the plaintiff $0 in damages. *Id.* We reversed because there was no dispute that the plaintiffs had suffered injuries and incurred medical expenses as a result, and therefore the jury's award of no damages was erroneous. *Id.* at 837. *Tipsword* is distinguishable because there, the jury awarded $0 in damages despite there being no dispute that the plaintiffs were injured and incurred some medical expenses that were indisputably related to their injuries. Here, the jury awarded plaintiff $1000 in damages for medical expenses, which suggests that the jury believed that plaintiff incurred some medical expenses for injuries caused by defendant but that plaintiff was not entitled to the full measure of damages that she sought.

¶ 27    We also reject plaintiff's argument that the jury's verdict was against the manifest weight of the evidence because she was awarded damages that were less than the emergency room bill she received. The jury heard testimony from Julie Johnson that called into doubt whether plaintiff was accurately billed for the emergency room services she received. There was evidence that plaintiff may have been billed twice for X-rays, and that the coding of the medical services did not objectively correspond to plaintiff's condition as reflected in the emergency room records. A reasonable jury could conclude that not all of the emergency room services for which plaintiff was billed were necessary or reasonable.

¶ 28    Next, plaintiff argues that the jury's award of $0 for pain and suffering is against the manifest weight of the evidence because the jury ignored "proven elements damages" related to pain and suffering. She contends that there was no evidence to contradict Dr. Anderson's testimony that plaintiff suffered pain as a result of the injuries she sustained in the collision, or Dr. Rabinowitz's testimony that she suffered a cervical strain. But as discussed, Dr. Rabinowitz testified that there were no objective signs of cervical strain, and that he assumed, based on plaintiff's subjective complaints, that plaintiff suffered a cervical strain. Our supreme court has explained that "[a]n award for pain and suffering is especially difficult to quantify." *Snover v. McGraw*, 172 Ill. 2d 438, 448 (1996). We are to consider the

distinction between subjective complaints of pain and objective symptoms. *Id.* at 449. The court explained:

> "In cases in which a plaintiff's evidence of injury is primarily subjective in nature and not accompanied by objective symptoms, the jury may choose to disbelieve the plaintiff's testimony as to pain. In such a circumstance, the jury may reasonably find the plaintiff's evidence of pain and suffering to be unconvincing." *Id.*

¶ 29   Here, we find that the jury could reasonably conclude that plaintiff's complaints of pain and suffering were unconvincing and that she was not entitled to any damages for pain and suffering. All of her complaints of pain were subjective. In June 2011, Dr. Anderson concluded that plaintiff sustained a cervical strain, arm strain, forearm strain, and back strain based on his evaluation of her as well as her subjective complaints of moderate pain. Likewise, Dr. Rabinowitz testified that GlenOaks's medical records on the date of the accident reflected no objective findings of cervical strain and stated that plaintiff was in no acute distress. The jury heard conflicting evidence regarding the amount of pain plaintiff was in when she went to the GlenOaks emergency room on June 11 and could reasonably conclude that plaintiff's trial testimony regarding her pain level affected her credibility regarding the amount of pain she experienced. Furthermore, the jury heard testimony that plaintiff had a history of pain in her neck, shoulder, and back and could reasonably conclude that any pain she experienced following the accident was not caused by the accident itself. We find that the jury did not ignore any proven elements of damages, as defendant presented some evidence challenging the proximate cause of plaintiff's injuries, and the jury was free to make credibility determinations regarding whether plaintiff was entitled to compensatory damages for her subjective complaints of pain.

¶ 30   In sum, we find that there was at least some evidence from which the jury could conclude that not all of the medical treatment that plaintiff received was necessary and related to the accident and that not all of the bills for the medical treatment she received were for services that that were necessary or reasonable. Furthermore, the jury was free to consider and reject plaintiff's subjective complaints of pain and suffering when determining whether to award compensatory damages for pain and suffering. The jury did not ignore any proven elements of damages, and therefore we conclude that the jury's verdict awarding plaintiff $1000 in damages was not against the manifest weight of the evidence. And, by default, the circuit court did not abuse its discretion by denying plaintiff's motion for a new trial.

¶ 31   Finally, we consider whether the circuit court abused its discretion by denying in part plaintiff's posttrial motion for costs. Plaintiff contends that the circuit court disallowed $243.67 in "witness fees," which she argues are recoverable under section 5-108 of the Code of Civil Procedure (Code) (735 ILCS 5/5-108 (West 2014)). She argues that these costs were for record requests for medical bills and that "because the records were introduced at trial and are witness fees, the trial court abused its discretion when it denied [her] request for [costs] pursuant to [section 5-108 of the Code]." We disagree.

¶ 32   Section 5-108 of the Code provides:

> "If any person sues in any court of this state in any action for damages personal to the plaintiff, and recovers in such action, then judgment shall be entered in favor of the plaintiff to recover costs against the defendant, to be taxed, and the same shall be recovered and enforced as other judgments for the payment of money, except in the cases hereinafter provided." *Id.*

Although this provision entitling a plaintiff to costs is mandatory, the statutory mandate is to be narrowly construed because statutes permitting recovery of costs are in derogation of the common law. *Moller v. Lipov*, 368 Ill. App. 3d 333, 346-47 (2006). Our supreme court has previously distinguished between taxable "court costs" and nontaxable "litigation costs." *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295, 302 (2003). "Court costs" are those "charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees," whereas "litigation costs" are "the expenses of litigation, prosecution, or other legal transaction, esp[ecially] those allowed in favor of one party against the other." (Internal quotation marks omitted.) *Id.* Section 5-108 of the Code "mandates the taxing of costs commonly understood to be 'court costs,' such as filing fees, subpoena fees, and statutory witness fees, to the losing party." *Id.* Statutory witness fees include the "fees and mileage allowance provided by statute for witnesses attending courts in this State." (Internal quotation marks omitted.) *Id.* at 304. However, generally, a successful litigant is not entitled to recover the ordinary expenses of litigation. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 804 (1999).

¶ 33    The "witness fees" here are nontaxable litigation costs. Plaintiff fails to acknowledge the distinction between a taxable court cost and a nontaxable litigation cost. She cites no authority to support her claim that the costs she incurred to secure medical bills that were then introduced as exhibits at trial constitute "court costs." She makes no argument that the "witness fees" were for statutory witness costs for transportation or attendance at court, as described in *Vicencio*. Instead, the "witness fees" appear to be nothing more than the costs to secure medical bills, which are costs that more closely resemble nontaxable litigation costs under section 5-108 of the Code. Construing the statute narrowly, as we must, we decline to find that "witness fees" consisting of record requests for medical bills later introduced as exhibits at trial amount to taxable court costs. The circuit court did not abuse its discretion when it declined to award these expenses as costs to plaintiff.

¶ 34                                    CONCLUSION
¶ 35    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.