2024 IL App (1st) 232000-U

FOURTH DIVISION
Order filed: August 15, 2024

No. 1-23-2000

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| TEKELA R. SCOTT | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Cook County, Law Division. |
| | ) |
| v. | ) No. 2020 L 13839 |
| | ) |
| LAMON P. CALDWELL, | ) Honorable |
| | ) Thomas More Donnelly, |
| Defendant-Appellee. | ) Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court did not abuse its discretion in denying the plaintiff's motion for a new trial due to two claimed violations of pretrial motions *in limine*, when one alleged violation was not a clear violation of the motion *in limine*, the second alleged violation was indirect, and any error did not deprive the plaintiff of a fair trial.

¶ 2    Plaintiff Tekela R. Scott brought a single-count complaint against defendant Lamon P. Caldwell under the Illinois Gender Violence Act (Act) (740 ILCS 82/1 *et seq.* (West 2022). The matter proceeded to a jury trial, and the jury returned a verdict for Caldwell and against Scott.

Scott moved for a new trial, arguing that she was deprived of a fair trial due to questioning by Caldwell that she alleged violated two portions of the trial court's order granting most of her motions *in limine*. The trial court denied Scott's motion for a new trial, and Scott appeals. We find that the trial court did not abuse its discretion in denying Scott's motion for a new trial and affirm.

¶ 3    In 2014, Caldwell was charged with four counts of criminal sexual assault based on an alleged assault of Scott. Following a bench trial at which Scott testified, Caldwell was found not guilty.

¶ 4    In 2020, Scott filed the instant action under the Act, alleging that Caldwell committed a battery against her because of her sex based on the same underlying incident as the prior criminal case.

¶ 5    Prior to trial, Scott filed a set of motions *in limine*. Relevant to this appeal, Scott's motion *in limine* #9 sought to "bar evidence of the verdict from the 2015 criminal trial" under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011). Scott's motion *in limine* #12 sought to bar reference to her two prior abortions in 1995 and 2002 under Illinois Rules of Evidence 401 (eff. Jan. 1, 2011), 402 (eff. Jan. 1, 2011), and 403. During the parties' pre-trial conference, Caldwell asked that he be allowed to address the existence of the prior criminal trial, but not bring up the not guilty verdict. The trial court granted Scott's motion *in limine* #9 with that understanding. Scott's motion *in limine* #12 was granted without any noted objection from Caldwell. Both motions #9 and #12 were granted in the trial court's written pretrial order.

¶ 6    The matter proceeded to a three-day jury trial starting June 12, 2023. During opening statements, both parties referred to the fact that Caldwell had been arrested and criminally charged for the incident underlying Scott's claim. Scott testified as part of her case-in-chief. During her

cross-examination, Scott was asked numerous questions about her testimony in the "criminal transcript," referring to the transcript of her testimony in Caldwell's criminal trial on December 14, 2015. No testimony was elicited regarding the result of that trial; the transcript was only used to impeach Scott.

¶ 7    Scott also called Dr. Louise Fitzgerald, Ph.D., who was admitted as an expert witness in the field of psychology, specifically on the psychological effects of sexual violence. On direct examination, Dr. Fitzgerald discussed her psychological evaluation of Scott in connection with the alleged assault and her opinion as to the source of Scott's post-traumatic stress disorder, among other mental health conditions.

¶ 8    During cross-examination, Dr. Fitzgerald was questioned regarding e-mail correspondence she had with Scott's counsel. The e-mail exchange contains a sentence from Dr. Fitzgerald stating, "I particularly wish I had known about the second abortion," in reference to her evaluation of Scott and the creation of her report. The cross-examination proceeded as follows:

> "Q. And in this e-mail, you indicate that Ms. Scott had a certain medical operation, a second one —
>
> [COUNSEL FOR PLAINTIFF]: Objection, [Y]our Honor, MIL.
>
> THE COURT: And if you would proceed with another question, please.
>
> [COUNSEL FOR DEFENDANT]: Okay.
>
> Q. Now you agree that — now, Ms. Scott — now, you agree that there were omissions of the text message correct, and another omission of a certain nature, correct?
>
> A. Excuse me?

Q. Do you agree that Ms. Scott omitted in her interviews telling you about her communications with Lamon Caldwell after the alleged assault, correct?

A. I didn't say that.

Q. Isn't it correct that you had wished that you had seen the text messages and pictures prior to your interview with Ms. Scott?

A. I always want to see — not prior to my interview. I always want to see everything prior to my report.

Q. And omissions could lead to wrong diagnoses, correct?

A. Depends on what the omissions are.

Q. Medical procedure omissions could lead to wrong diagnoses, Ms. —

[COUNSEL FOR PLAINTIFF]: Objection, your Honor.

THE COURT: Sustained.

Q. Isn't it true that Ms. Scott testified — or Ms. Scott, during your interview, indicated her zealous religious nature?

A. She did.

Q. And isn't it true that omissions potentially could conflict with her religious zealousness in the sense of your diagnosis of her mental state?

A. I'm sorry, sir, that's a completely incomprehensible question."

Scott did not object to the final question in the above exchange, and Caldwell moved on to a different topic without receiving an answer to the final question. The e-mail referring to Scott's abortion was not published to the jury, nor was it admitted into evidence.

¶ 9 Caldwell testified as part of his case-in-chief. During introductory questioning about his background and occupation, Caldwell was asked, "By the way, have you ever been convicted of a crime?" Caldwell responded "No, sir." Scott objected, and the trial court sustained the objection and struck Caldwell's answer.

¶ 10 During a sidebar outside the presence of the jury, Caldwell argued that the question did not directly violate motion *in limine* #9, as the question did not directly refer to the criminal trial or its result. The trial court agreed as to the indirect nature of the violation, but explained its ruling:

"THE COURT: So I sustained the objection because I thought it would lead to the inference that it was a not guilty on the criminal charges.

And while it's not a direct violation, I thought it was an indirect one, and I thought it was best to sustain the objection and instruct the jury to disregard it."

¶ 11 At the close of evidence but before closing arguments, counsel for Scott raised the issue regarding the alleged violations of the motions *in limine*, resulting in the following exchange:

"[COUNSEL FOR PLAINTIFF]: The other issue that we're very concerned by defense counsel's repeated eliciting or attempts to elicit information, evidence that was explicitly barred in this court's order limiting — this court's order related to the motions *in limine* including Mr. Caldwell's lack of criminal conviction as well as Ms. Scott's medical procedures.

THE COURT: And what do you want the Court to do?

[COUNSEL FOR PLAINTIFF]: Well, [Y]our Honor, we are considering our options at this point. At this point, we would like to preserve our objection. We know that

we need to have — to the extent we need a motion for the filing for a new trial or mistrial, we would need to do that before the jury enters a verdict.

At this point, we need more time to consult with our client and discuss our options, so I did want to put on the record the concern.

THE COURT: So at this time, you don't want me to do anything? I've sustained your objection and I instructed the jury to disregard it. I struck the testimony.

There's nothing more you want me to do at this moment?

[COUNSEL FOR PLAINTIFF]: That's correct. At this moment, there's nothing more we want to you do. The one thing we do want to do is preserve our record and not waive anything today, [Y]our Honor."

¶ 12    The parties then discussed the possibility of a curative instruction with the Court, and the trial court instructed the parties to confer. Prior to closing arguments, Scott represented that "we do not think any additional curative measures are needed," and no curative instruction was ultimately given to the jury.

¶ 13    The jury returned a verdict for Caldwell and against Scott. Scott subsequently filed a motion for a new trial based on the alleged violations of the motions *in limine*. After a hearing, the trial court denied the motion. In its oral ruling, the trial court discussed the two alleged violations of the motions *in limine*. The trial court found that the exchange during the cross-examination of Dr. Fitzgerald regarding a medical procedure was too confusing for the jury to make the inference that Scott had any abortions. The trial court agreed with Scott that the jury could have made the inference that Caldwell was found not guilty at the criminal trial based on the stricken testimony, but it found that the testimony was only an indirect violation of motion *in limine* #9. The trial court

assessed the impact of the indirect nature of the violation, the apparent inadvertence of the violation, along with Scott's decision to not ask for a curative instruction on the overall fairness of the trial, and found that a new trial was not warranted and denied the motion. This appeal follows.

¶ 14    Scott's sole claim of error on appeal is that the trial court abused its discretion by denying her motion for a new trial based on the alleged violations of motions *in limine* #9 and #12. We find that the trial court did not abuse its discretion in denying Scott's motion for a new trial, as the alleged violation of motion *in limine* #12 was not clear, and any violation of motion *in limine* #9 did not deprive her of a fair trial, nor did cumulative effect of both alleged violations.

¶ 15    A trial court's ruling on a motion for a new trial will not be disturbed on appeal unless the moving party can demonstrate that the trial court clearly abused its discretion. *Anderson v. Zamir¸* 402 Ill. App. 3d 362, 364 (2010). A violation of a motion *in limine* is not *per se* reversible error. *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1132 (2000). An alleged violation of a motion *in limine* warrants a new trial only when the order is specific, the violation is clear, and the violation deprives the movant of a fair trial. *Bakes v. St. Alexius Medical Center*, 2011 IL App (1st) 101646, ¶ 40.

¶ 16    Starting with motion *in limine* #12, we agree with the trial court that it was unclear whether motion *in limine* #12 was violated by the exchange with Dr. Fitzgerald on cross-examination. While the order clearly prohibited reference to Scott's prior abortions, the exchange at issue contains no direct reference to abortion, and the indirect reference to medical procedures was in the context of an exhibit that the jury did not see.

¶ 17    Caldwell attempted to elicit an answer from Dr. Fitzgerald regarding Scott's disclosure of medical procedures and communications with Caldwell and the impact that non-disclosure may

have had on Dr. Fitzgerald's evaluation of Scott. As Caldwell points out, the word "abortion" was never uttered during this exchange. In the context of the e-mails being shown to Dr. Fitzgerald, the questioning was almost certainly referring to Scott's failure to disclose a prior abortion to Dr. Fitzgerald, but that e-mail was neither admitted into evidence nor published to the jury. The jury was only presented with the questions by Caldwell referring to "medical procedure omissions." Additionally, Scott failed to object to the final question in this sequence, and therefore has not preserved any claim of error with regards to that question.

¶ 18 We agree with the trial court that there was no clear violation of motion *in limine* #12, and, therefore, the trial court did not abuse its discretion in denying Scott's motion for a new trial on that basis. See *Brown v. Bozorgi*, 234 Ill. App. 3d 972, 977 (1992) (finding that veiled references to fact that doctor involved in treating plaintiff had reached settlement agreement did not constitute clear violation of motion *in limine* barring reference to plaintiff's settlement agreements and did not warrant new trial).

¶ 19 Scott also argues that the fact that she was required to raise two objections to this line of questioning alone constitutes prejudice or deprived her of a fair trial, but we disagree. Caldwell was entitled to cross-examine the basis of Dr. Fitzgerald's opinions about Scott, and he attempted to explore Scott's non-disclosure of certain aspects of her history without directly referring to abortion. Scott points to *Geisberger v. Quincy*, 3 Ill. App. 3d 437, 441 (1972), in support of her position, but *Geisberger* is distinguishable from the present case, as that case involved "repeated rulings and admonitions" not to address prohibited topics, whereas here the trial court made one admonishment to "proceed with another question" after Scott's first objection and sustained her second objection. After a third question arguably implicating the barred topic was not objected to

or answered by Dr. Fitzgerald, Caldwell moved on. Given the numerous objections raised by Scott throughout the trial, we cannot say that the fact that she raised two objections during this exchange drew undue attention to the questions or resulted in any prejudice.

¶ 20    Turning to motion *in limine* #9, we agree with the trial court and Scott that the jury could have "put 2 and 2 together to make 4" and concluded that Caldwell had been tried and found not guilty of criminal sexual assault. It was no secret based on the parties' opening statements and the repeated referrals to Scott's testimony in a prior criminal trial during her cross-examination that Caldwell had been criminally tried regarding the allegations underlying the civil case. Within that context, Caldwell's testimony that he had not been convicted of a crime could lead to an inference that the result of the criminal trial was a not guilty verdict. However, we also agree with the trial court that this was an indirect violation of motion *in limine* #9. Rather than directly eliciting the not-guilty verdict of the criminal trial as prohibited by motion *in limine* #9, it required an inference based on two pieces of testimony taken on different days that there was a criminal trial and that Caldwell had not been convicted of any crime. Regardless, Caldwell's testimony that he had not been convicted of a crime was a clear, if indirect, violation of motion *in limine* #9's prohibition on introducing evidence of the not-guilty finding in Caldwell's criminal trial.

¶ 21    Finding that motion *in limine* #9 was indirectly violated, we find that the trial court did not abuse its discretion in denying Scott's motion for a new trial based on this violation. The violating question and answer was in the context of Caldwell's background, rather than intertwined with a discussion of the alleged assault or of the criminal trial. The trial court sustained Scott's objection and struck Caldwell's answer, which "generally is a prompt cure for any prejudicial impact that may have been caused." *Kass v. Resurrection Medical Center*, 316 Ill. App. 3d 1108, 1114 (2000).

¶ 22    Scott argues that the jury still heard this information, and the jury could have used the fact that Caldwell was acquitted to undermine her credibility or confuse the burden of proof. However, we must presume that the jury followed the trial court's instruction when it struck the offending testimony and followed the trial court's instruction regarding the applicable burden of proof. *McHale v. Kiswani Trucking, Inc.* 2015 IL App (1st) 132625 ¶ 47. We cannot find the trial court abused its discretion in denying Scott's motion for a new trial based on its assessment of the impact of the single improper question on the proceedings as a whole.

¶ 23    Scott also contends that the trial court improperly considered the apparent unintentional nature of the violation of the motions *in limine*, the indirect nature of the violations, and her failure to request a curative instruction or move for a mistrial in denying her motion for a new trial. We disagree that these considerations by the trial court in its oral ruling on Scott's motion constitute error or an abuse of discretion. The trial court's discussion of intent was related to the context of the question regarding Caldwell's criminal history following preliminary questions about his background, rather than in the context of the criminal trial or the allegations in this case. With regards to the discussion of the indirect nature of the violation, the trial court discussed the lack of precedent supporting the proposition that an indirect violation of a motion *in limine* warranted a new trial. We cannot say that the trial court's discussion of relevant precedent, or lack thereof, was an improper consideration.

¶ 24    Similarly, the trial court properly considered Scott's decision not to move for a mistrial or curative instruction as a factor in denying her motion for a new trial. Before closing arguments, Scott explicitly addressed the possibility of moving for a mistrial or asking for a curative instruction but wanted to evaluate her options before doing so. Rather than move for a mistrial or

ask for a curative instruction, Scott elected to wait for the verdict, then raise her claim of error in a posttrial motion. Scott is correct that she was not required to ask for a curative instruction or move for a mistrial in order to preserve her claim of error for review. *Jackson ex rel. Jackson v. Reid*, 402 Ill. App. 3d 215, 231 (2010). However, this conduct suggests that prior to the verdict in Caldwell's favor, Scott did not see the error as so prejudicial as warranting a new trial. See *Holloway v. Sprinkmann Sons Corp. of Illinois*, 2014 IL App 4th 131118, ¶ 127 ("A party cannot wait until after the verdict and then revise its assessment of fairness. That would be taking two bites out of the apple."). The trial court properly took Scott's tactical decisions into account as a factor in assessing whether she received a fair trial.

¶ 25 Alternatively, Scott argues that the cumulative impact of both alleged violations deprived her of a fair trial. We disagree. Even considering the cumulative impact of both claimed violations, we find no abuse of discretion by the trial court in denying Scott's motion for a new trial. In ruling on Scott's motion for a new trial, the trial court carefully discussed the alleged violations in the context of the entire trial and found that Scott was not deprived of a fair trial due to the claimed violations of the motions *in limine*. The trial court was in a superior position to assess the impact of the claimed violations on the jury and on the trial as a whole. The trial court also considered many of the same cases cited by Scott before this court and found that none of them were directly analogous to the present case. Given the trial court's carefully thought-out reasoning, we find no abuse of discretion in the trial court's conclusion that the claimed violations of the motions *in limine* did not deprive Scott of a fair trial.

¶ 26 For the foregoing reasons, we affirm the trial court's order denying Scott's motion for a new trial.

¶ 27    Affirmed.