2026 IL App (2d) 250434-U
No. 2-25-0434
Order filed May 7, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

LUKE ROHRBACHER, Plaintiff-Appellee,

v.

TARAS BALANIUK, Defendant-Appellant

Appeal from the Circuit Court of Kendall County.
Honorable Stephen L. Krentz, Judge, Presiding.
No. 25-SC-645

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant forfeited his challenge to the trial court's judgment in favor of plaintiff on plaintiff's small claims complaint for breach of contract by failing to present a proper argument in compliance with our supreme court rules; forfeiture aside, the court's judgment was not against the manifest weight of the evidence or otherwise improper.

¶ 2    Following a bench trial in small claims court, the trial court entered judgment in favor of plaintiff, Luke Rohrbacher, on his complaint for breach of contract against defendant, Taras Balaniuk, and awarded plaintiff $10,000 in compensatory damages and $676 in costs. Defendant timely appealed. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On April 21, 2025, plaintiff filed a small claims complaint for breach of contract against defendant, stemming from defendant's improper installation of laminate flooring in plaintiff's home. Plaintiff alleged that, in July 2024, he hired defendant to "install flooring, paint multiple interior areas, and refinish a staircase." Plaintiff paid defendant $19,255, excluding materials, in full satisfaction of their agreement. However, the flooring installation was "incomplete and *** caused significant and costly damage," requiring "full replacement and repair." Plaintiff consulted with a licensed flooring contractor who, according to plaintiff, concluded:

      "All the flooring must be removed and replaced due to [defendant's] decision to install it over the existing carpet underlayment, which is soft and not rated for this type of floor. This underlayment caused excessive flex in the flooring, resulting in broken joints and continued structural failure throughout. The damage will only worsen over time, and no partial repair is possible—the flooring must be fully redone on a proper hard surface."

¶ 5    Plaintiff attached to his complaint (1) numerous photographs of the flooring, (2) two proposals from "Carpet Near Me" with quotes to remove and replace the flooring, (3) plaintiff's April 12, 2025, demand letter to defendant, (4) proof of an April 15, 2025, delivery of the demand letter, (5) a bank statement showing payments, and (6) a screen shot of a handwritten document (which is illegible).

¶ 6    The attached demand letter advised defendant of the issues with the flooring and stated:

      "Due to the extent of the damage and deficiencies, the professional estimate I received for full repair is $8,230.28, excluding materials. Since the existing flooring is no longer usable due to broken joints, I also obtained an estimate that includes materials, totaling $15,995.86. This estimate covers removal of your faulty work, proper subfloor

preparation, correct flooring installation, transition strip installation, and other necessary corrections.

Because the materials quoted in this estimate are higher end than those you originally used, I have adjusted the replacement cost accordingly. You installed flooring priced at $1.19 per unit across 1,740 square feet, which amounts to $2,076. Adding this material cost to the labor estimate brings the total value of the damage to $10,306.28. However, in good faith and in the interest of resolving this matter without further escalation, I am willing to settle for $10,000."

¶ 7 The matter proceeded to a bench trial on September 9, 2025. Both parties appeared *pro se* and each testified on their own behalf. Defendant testified with the aid of a Ukrainian interpreter. No other witnesses were present.

¶ 8 Plaintiff testified as follows. In July 2024, he and defendant reached an agreement for defendant to replace all flooring in plaintiff's home. Defendant agreed that this would include removing old carpeting, replacing the underlayment, and installing new flooring, including the transition strips. Plaintiff purchased the flooring from Floor and Decor. While there, defendant told plaintiff "that he would provide the underlayment because the Floor and Decor option was too expensive." According to plaintiff, when defendant removed the carpeting, he decided to leave the carpeting underlayment intact, rather than replace it with underlayment designed for laminate flooring. In addition, defendant never installed the transition strips. Within a few weeks, joints on the laminate flooring began to separate and break. Further, defendant failed to complete several other tasks (unrelated to flooring). Given that plaintiff had already paid in full, the process resulted in several disagreements between plaintiff and defendant, which "allowed defendant to hold off

on completing any of the final work." After several months, defendant returned and completed all the necessary work. However, by that time, "more and more [flooring] joints continued to break."

¶ 9    Plaintiff asked two different flooring companies—Luna and Carpet Near Me—to evaluate the damage. According to plaintiff, "[t]hey both advised [him] that the laminate pieces were not replaceable and the entire job would have to be replaced in full for a proper fix." Luna quoted plaintiff $14,442 to complete the work; Carpet Near Me quoted $15,955 to complete the work. A quote from Carpet Near Me, (admitted as Plaintiff's exhibit No. 8), included the following statement:

> "Removal of all old flooring all joints are broken from bad install flooring contractor left old carpet padding which is huge no no. To [*sic*] much flex caused breakage everywhere! Will need new shoe old shoe will must [*sic*] likely break during removal. Flooring is not included customer must provide!"

¶ 10    Plaintiff attempted to resolve the issue with defendant. On April 15, 2025, he sent defendant a demand letter, which included photographs of the flooring and the quotes from the flooring companies. In response, defendant advised that he would send his team to "remove all of the floor, replace the underlayment, and replace some of the laminates where the locks were broken." Plaintiff agreed, with the condition that defendant would sign an agreement for the corrective work. Defendant stated that he would sign an agreement and provided his email. Plaintiff sent the proposed agreement to defendant, but he never received a response. After a couple of weeks, plaintiff decided to have the floor repaired by Luna. Luna completed the work and plaintiff paid Luna $14,442. Plaintiff then filed the complaint to recoup $10,000 from defendant.

¶ 11 Plaintiff asked to admit the following evidence: (1) the demand letter sent to defendant, (2) proof of delivery of the demand letter, (3) several pictures showing (a) cracks in the flooring joints, (b) missing transition strips, and (c) carpeting underlayment visible when flooring removed, (4) quotes from Luna and Carpet Near Me, and (5) screen shots of texts between plaintiff and defendant, including a text from defendant acknowledging that he received the demand letter. The exhibits were admitted.

¶ 12 Defendant testified in relevant part as follows. In 2024, he agreed to replace the flooring in plaintiff's house. According to defendant, when the job was completed, despite all the disagreements, plaintiff was happy with the work. Defendant later received a message "that the floor started breaking." Defendant offered to investigate and resolve the problem. Plaintiff refused and told defendant that the only solution was for defendant to pay for the repair work in full or set up a payment plan. Defendant claimed that he provided his email to plaintiff, but he never received a message. Defendant stated that he "met [plaintiff] in court" and offered to correct the problem but plaintiff told him that someone else was doing it. Defendant maintained that he could not determine what caused the problem, because plaintiff had already replaced the flooring. According to defendant, the problem arose due to plaintiff's choice of low quality flooring. Defendant asserted that, despite not being licensed, he did professional work.

¶ 13 Defendant submitted two exhibits: (1) photographs showing the installed flooring, and (2) a screen shot of a text message from plaintiff indicating that plaintiff only wanted reimbursement.

¶ 14 Plaintiff had no questions for defendant. However, plaintiff commented on the evidence. Plaintiff agreed that he did initially refuse defendant's offer to repair the flooring but that he changed his mind after thinking about it overnight. The next day, plaintiff texted defendant and

agreed to allow him to repair the flooring, as evidenced by plaintiff's text message to defendant. Plaintiff again stated that, after he sent the agreement for the repair work to defendant to sign, he never received a response. Plaintiff reiterated his main point as follows: "[Defendant] said he was going to get us new underlayment. He chose to use the carpet underlayment which caused, what I'm being told by everyone I've consulted with, is the root cause of all the issues we experienced with the flooring."

¶ 15    Plaintiff provided the following additional testimony in response to the trial court's inquiries. Both Luna and Carpet Near Me advised plaintiff that it would not be possible to use any of the existing flooring. Plaintiff paid a total of $14,442 to Luna. Plaintiff paid $3.40 per square foot to Luna for the material. Plaintiff stated that he paid $1.29 per square foot for the flooring installed by defendant. He stated further:

> "In my civil demand letter, I stated that I would recalculate based on the 1.19 at $1,700 [*sic*] square feet which came out to a little over $2,000, and then I added it to the $8,000 in labor that Carpet Near Me had quoted, $8,200, so that came to 10,300."

Plaintiff agreed that he did not expect defendant to pay for the more expensive flooring installed by Luna. Plaintiff contended that he should be reimbursed based on (1) the cost of the material installed by defendant and (2) the cost of labor paid to Luna.

¶ 16    Defendant argued that (1) plaintiff could have initially picked a higher quality flooring, (2) defendant offered, but was not allowed, to inspect the flooring, (3) the additional expenses are "significantly less than 10,000," and (4) he was not hired as a licensed professional.

¶ 17    The trial court made the following findings. First, the court found that the parties entered into a contract for defendant to remove carpeting and replace it with flooring and that defendant

installed the flooring. The court noted that, while the flooring initially appeared to be adequately installed, problems began to arise. The court stated:

"Shortly after the flooring began to fail, meaning it started to separate and the joints were cracking, and I don't need an expert witness here to testify to why that would happen. It is very obvious that if you put laminate flooring over carpet padding, it's going to fail.

[Defendant] offered no explanation or testimony as to why he installed laminate flooring over carpet padding.

Common sense tells you, with an unstable sub-surface, laminate flooring is going to fail over time.

So [defendant] breached the contract by failing to properly install the laminate flooring over a stable sub-surface."

¶ 18    The trial court next addressed damages. The court stated that "the measure of damages for a breach of contract, when a contractor has provided defective performance, is the cost of correcting the defective condition." The court found that plaintiff offered credible testimony and evidence that he paid more than $10,000 to correct the defective condition. The court found that plaintiff did not attempt to unfairly charge defendant for upgraded material. Noting that the maximum small claims award was $10,000, the court awarded that amount to plaintiff. In addition, the court questioned plaintiff as to whether he incurred any court costs. Plaintiff reported that he paid a filing fee, which was determined to be $356. Plaintiff also reported that he paid $250 to a private firm for service, which was unsuccessful, and $70 to the Sheriff. Accordingly, the court awarded plaintiff $676 in costs.

¶ 19    Defendant timely appealed. We note that plaintiff did not file a brief. However, because the record is straightforward and the issues can readily be decided without the aid of a responsive

brief, we will consider the appeal on defendant's brief only.  See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 20                                    II. ANALYSIS

¶ 21    Defendant contends: (1) the trial court's judgment that defendant "breached the parties' agreement and proximately caused [plaintiff's] alleged damages was against the manifest weight of the evidence"; (2) the court erred by "substituting judicial assumption, inference, and generalized notions of 'common sense' for legally required proof" and improperly "presumed defectiveness"; (3) the court erred by awarding damages in the maximum statutory amount without requiring plaintiff to provide an "itemized breakdown segregating corrective costs from elective replacement or upgraded materials" or considering failure to mitigate; (4) plaintiff's "spoliation of evidence"—*i.e.*, the "removal and disposal of the allegedly defective flooring"—required "an adverse inference or limitation of damages"; (5) the court violated defendant's right to due process by admitting certain evidence without allowing defendant a meaningful opportunity to review and respond; and (6) the court's award of costs exceeded its statutory authority.

¶ 22    At the outset, we note that defendant's brief fails to comply with various provisions of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which governs the contents and requirements of an appellant's brief.  Rule 341(h)(1) requires a "table of contents" that includes "a summary statement, entitled 'Points and Authorities,' of the points argued and the authorities cited in the Argument."  Ill. S. Ct. R. 341(h)(1) (eff. Oct. 1, 2020).  Rule 341(h)(6) requires a statement of facts that "contain[s] the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal."  Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).  Rule 341(h)(7) requires an argument section that "contain[s] the contentions of the appellant and the reasons therefor, with citation of the

authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Rule 341(h)(9) requires "[a]n appendix as required by Rule 342." Ill. S. Ct. R. 341(h)(9) (eff. Oct. 1, 2020).

¶ 23    Here, defendant's statement of facts does not include citations to the record. Defendant's argument section is similarly devoid of citations to the record as well as citations to any supporting authority. To be sure, defendant has included a "Table of Authorities," which consists of a list of various Illinois constitutional provisions, statutes, supreme court rules, and case law. Presumably, this was an attempt to comply with Rule 341(h)(1), which requires a "table of contents" including "the authorities cited." Ill. S. Ct. R. 341(h)(1) (eff. Oct. 1, 2020). However, Rule 341(h)(1) also specifically requires that the "table of contents" "shall consist of the headings of the points and subpoints as in the Argument, with the citation under each heading of the authorities relied upon or distinguished, and a reference to the page of the brief on which each heading and each authority appear." *Id.* Here, defendant merely provided a list of authorities, with no reference to which argument the various authorities apply or where they appear in the brief. Indeed, this is likely because the cited authorities are not contained anywhere in the actual argument. We note too that defendant's brief does not include an appendix.

¶ 24    Rule 341(h) is not a mere suggestion, and this court has discretion to strike a noncompliant brief and dismiss the appeal. *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). Further, a party forfeits his contentions by failing to provide the reviewing court with proper argument including citations to the record and authority. *Elder v. Bryant*, 324 Ill. App. 3d 526, 533 (2001). "A reviewing court is entitled to have issues clearly defined with pertinent authority cited" and "is not a repository into which an appellant may foist the burden of argument and research." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). "A reviewing court is not obligated to search the record

for evidence on which to base a reversal, and unless reference is made to those portions of the record supporting reversal, the argument will not be considered." *Webb v. Angell*, 155 Ill. App. 3d 848, 854 (1987).

¶ 25    Defendant's *pro se* status does not excuse his non-compliance with Rule 341.   See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78 (stating that a *pro se* litigant must comply with the same rules and is held to the same standard as a licensed attorney).  While we decline to strike defendant's brief, we find that defendant has forfeited his contentions by failing to present us with a proper argument.  Forfeiture aside, defendant's arguments lack merit.

¶ 26    As noted, this matter was tried in small claims court.  Illinois Supreme Court Rule 286 (eff. Feb. 2, 2023) allows the trial court in a small claims proceeding to "relax the rules of procedure and the rules of evidence."  Ill. S. Ct. R. 286 (eff. Feb. 2, 2023).  The court may call witnesses who are present to testify and "may conduct or participate in direct and cross-examination of any witness or party."  *Id.*  At the end of the proceeding, "the court shall render judgment and explain the reasons therefor to all parties."  *Id.*

¶ 27    "In a bench trial, the trial court sits as the trier of fact, hearing the witnesses and reviewing the direct presentation of the evidence, and it therefore is in the best position to make credibility determinations and factual findings."  *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 39.  Thus, where the parties' testimony is conflicting, the court's findings shall not be disturbed unless they are against the manifest weight of the evidence.  *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).  "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence."  *Id.*

¶ 28    "To succeed on a breach of contract claim, a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28.  Here, there is no dispute concerning the first two elements of the cause of action.  Instead, defendant contends that the evidence was insufficient to prove breach and resultant damages.  Whether a breach of contract occurred is a question of fact that will not be reversed on appeal unless the finding is against the manifest weight of the evidence.  *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 483 (2009).

¶ 29    The trial court's judgment was not against the manifest weight of the evidence.  Plaintiff testified that the parties' agreement included removing the existing carpeting and replacing the existing underlayment.  The evidence, by way of testimony and photographs, established that defendant installed the flooring over the existing carpet padding.  Although plaintiff did not present an expert witness to testify that this installation method was improper, he testified that he consulted with a licensed flooring contractor who provided both a written quote for repair and his professional assessment.  This written quote, which included the contractor's statement regarding the cause of the problem, was admitted into evidence, without objection by defendant.  The statement also indicated that all flooring needed to be replaced.  Defendant offered no evidence to the contrary, claiming only that he would "assume *** that all the issues that happened due to low quality of materials."  Thus, we cannot say that the court's conclusion that defendant breached the contract by improperly installing the laminate flooring, causing the flooring to fail, was against the manifest weight of the evidence.  To be sure, the trial court noted that "[c]ommon sense tells you, with an unstable sub-surface, laminate flooring is going to fail over time."  We find no error in this conclusion.  See *Bahus v. Union Pacific Railroad Company*, 2019 IL App (1st) 180722, ¶ 43

(noting that "expert testimony is unnecessary where the matter is within the realm of lay understanding and common knowledge" (quoting *Lynch v. Northeast Regional Commuter R.R. Corp.*, 700 F. 3d 906, 913-15 (7th Cir. 2012)). In any event, contrary to defendant's argument, there was also evidence to support the court's common-sense conclusion.

¶ 30 We turn to damages. "The measure of damages for the breach of a contract when a contractor has provided defective performance is generally the cost of correcting the defective condition." *Kunkel v. P.K. Dependable Const., LLC*, 387 Ill. App. 3d 1153, 1158 (2009). The plaintiff must establish a reasonable basis for computing damages. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 107 (2006). Damages must be proved with reasonable certainty and cannot be based on conjecture or speculation. *Id.* at 106-07. An award of damages is not against the manifest weight of the evidence if there is an adequate basis in the record to support the court's determination of damages. *Schatz v. Abbott Laboratories, Inc.*, 51 Ill. 2d 143, 147 (1972).

¶ 31 Here, the evidence established that all the flooring needed to be removed and replaced. The evidence also established the cost of correcting the improperly installed flooring. Plaintiff testified that he paid Luna $14,442 to replace the improperly installed flooring and provided the court with Luna's bill. Plaintiff acknowledged that Luna's charges included a higher-priced flooring material. Although Luna did not provide an itemized cost breakdown, plaintiff testified that he paid $3.40 per square foot ($5,780) for the flooring installed by Luna. Plaintiff testified that he paid $1.29 per square foot for the flooring installed by defendant but that he agreed to calculate the cost at $1.19 per square foot ($3,230). Subtracting the cost of Luna's flooring material ($5,780) from Luna's $14,442 bill, leaves a balance of $8,662 for installation costs. Adding the cost of the flooring material installed by defendant ($3,230), established a total cost of $11,892 to correct the improperly installed flooring. (The trial court found that the cost to correct

- 12 -

the defective condition was "well in excess of $10,000.") Thus, the evidence was sufficient to establish a reasonable basis for computing damages. As the court noted, the maximum small claims award was $10,000. See Ill. S. Ct. R. 281 (eff. Jan. 1, 2022) ("a small claim is a civil action based on either tort or contract for money not in excess of $10,000, exclusive of interest and costs"). Because plaintiff's testimony established damages greater than that amount, the court's $10,000 award was not against the manifest weight of the evidence.

¶ 32    Defendant also contends that plaintiff's removal and disposal of the flooring deprived defendant "of any meaningful opportunity to inspect the work or present a technical defense." According to defendant, "[w]here spoliation prejudices the opposing party's ability to defend against a claim, courts may impose sanctions, adverse inferences, or limit or deny recovery." To be sure, defendant argued in closing that he was not given an opportunity to inspect and "find out the real reason" for the flooring failure. However, the record suggests otherwise. Plaintiff testified that, when he first advised defendant that there was an issue, defendant agreed to return and replace the underlayment and damaged flooring. Although plaintiff initially rejected defendant's offer, he texted him the next day and told defendant that he would agree with defendant's proposal to redo the work if they put their agreement in writing. Defendant agreed to do so and provided his email to plaintiff. Plaintiff sent defendant a written agreement, but he never received a response. Thus, the evidence rebuts defendant's claim that he had no opportunity to inspect the work. In any event, defendant's claim of prejudice is dubious, given the evidence that he improperly installed the flooring over carpeting underlayment. Defendant provided no testimony establishing that this method of installation was proper regardless of the quality of flooring material. Indeed, when plaintiff contacted defendant about the issues with the flooring, defendant responded by text and

seemingly conceded that the underlayment was the problem, given that he "suggest[ed] removing the entire floor, [and] replacing the underlayment." Accordingly, this claim is without merit.

¶ 33 Defendant's claim that the proceedings violated due process is also belied by the record. Defendant argues that he was denied due process due to: (1) the "rushed admission" of evidence, (2) an inadequate opportunity to review and respond to exhibits, and (3) "the absence of formal safeguards ensuring accurate interpretation in a pro se bench trial." The record does not support defendant's claims. Plaintiff offered 11 exhibits for admission, describing each exhibit to the court. When plaintiff first offered exhibit No. 1—the demand letter—the court asked defendant if there was any reason why it should not be admitted into evidence. Defendant stated: "I don't remember completely what this document is about, and I really don't remember, didn't have enough time to look through this whole document." The court admitted the document. We note, however, that there is no question that defendant was familiar with the document. Prior to the admission of the document, plaintiff advised the court that defendant had acknowledged receipt of the letter by text (which was admitted as Plaintiff's exhibit No. 11). Accordingly, we find no error. As for the remaining exhibits, as each exhibit was offered by plaintiff, the court asked defendant whether he had any objections. Defendant did not object to any of the remaining evidence or request additional time to respond. Accordingly, he has forfeited any challenge to the admission of the evidence. See *Krengiel v. Lissner Corp., Inc.*, 250 Ill. App. 3d 288, 295 (1993) (a party's failure to object to the admission of evidence forfeits the issue for review). As for defendant's third point—regarding formal safeguards—we cannot review it as defendant does not make clear precisely what was lacking.

¶ 34 Finally, we comment on defendant's claim that the award of costs must be vacated because there were imposed "without statutory authority or competent evidentiary support." "Section 5-

108 of the Code [of Civil Procedure (735 ILCS 5/5-108 (West 2014))] 'mandates the taxing of costs commonly understood to be "court costs," such as filing fees, subpoena fees, and statutory witness fees, to the losing party.' " *DiFranco v. Kusar*, 2017 IL App (1st) 160533, ¶ 32 (quoting *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295, 302 (2003)). Here, plaintiff testified that he paid a filing fee, (which was determined to be $356), $250 to a private firm for service (which was unsuccessful), and $70 to the Sheriff. The trial court accepted this testimony and awarded plaintiff $676 in costs. We find no error.

¶ 35                                III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 37    Affirmed.